# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Uniontown Newspapers, Inc., d/b/a The Herald Standard; and Christine Haines, | : : : | |
| Petitioners | : : | No. 66 M.D. 2015 Argued: November 15, 2016 |
| v. | : : | |
| Pennsylvania Department of Corrections, | : : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge


**OPINION**
**BY JUDGE SIMPSON**                    **FILED: December 19, 2016**


Before this Court are cross-motions for summary relief involving enforcement of a final determination the Office of Open Records (OOR) issued pursuant to the Right-to-Know Law (RTKL).[1] Christine Haines, on behalf of Uniontown Newspapers, Inc., d/b/a *The Herald Standard*, (Requester) appealed to OOR when the Department of Corrections (DOC) denied her request for de-identified diagnosis data of inmates at State Correctional Institution (SCI)-Fayette. OOR rejected DOC's defenses, ordering disclosure of "all responsive records." DOC did not appeal. Arguing DOC withheld responsive records, Requester asks this Court to compel their disclosure and seeks statutory sanctions, including attorney fees and penalties, for bad faith. DOC counters that sanctions are not merited because it disclosed responsive records, albeit days after the deadline in OOR's order.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

Because there is a dispute as to whether DOC provided all responsive records, we grant summary relief in part to DOC as to withholding inmate medical files and as to creation of a record, and deny summary relief as to its compliance. We deny summary relief to Requester, allowing the enforcement action to proceed for further development of the record as to *whether* and *when* DOC disclosed all responsive records in accordance with OOR's mandate. As the extent of DOC's noncompliance is unclear at this stage, penalties for bad faith are premature.

## I. Background

### A. Facts

In September 2014, the Abolitionist Law Center published its report, "No Escape: Exposure to Toxic Coal Waste at [SCI-] Fayette," correlating ill health of SCI-Fayette inmates to nearby toxic coal waste ("No Escape" Report). Pet'rs' Br. in Support, Ex. 6. In response, DOC undertook an internal investigation into the charges (Investigation). Director of DOC's Bureau of Health Care Services, Christopher Oppman (Director Oppman), oversaw the DOC Investigation. Drs. Paul Noel and Eugene Ginchereau spearheaded the Investigation.

On December 31, 2014, DOC issued a press release regarding the records reviewed during its Investigation and the results (Press Release). DOC noted the Department of Health (DOH) was conducting its own investigation, which was <u>not yet final</u>. DOH prepared its own report regarding its investigation and findings (DOH Investigative Results), submitted to DOC on February 3, 2015. DOC provided information to DOH, such as by email, including inmates' health data, to assist DOH's investigation.

## B. Procedural History

Before the investigations were completed, and inspired by the "No Escape" Report, Requester submitted a request to DOC on September 25, 2014, seeking (with emphasis added):

> documentation of illnesses contracted by inmates and/or staff members at SCI-Fayette. I am not seeking identifying information, only the types of reported contracted illnesses and the number of inmates or staff members with those illnesses. I am particularly interested in various types of cancer reported at SCI-Fayette since its opening, as well as respiratory ailments reported. If there is also information comparing the health at SCI-Fayette with the health at other state correctional facilities, that would also be helpful.

(Request). See Pet'rs' Br. in Support at Ex. 3. After invoking an extension, DOC issued a denial, citing several exceptions in the RTKL.[2] Requester appealed to OOR.

Before OOR, DOC limited its argument to the medical records exception in Section 708(b)(5) of the RTKL, 65 P.S. §67.708(b)(5), and the noncriminal investigation exception in Section 708(b)(17) of the RTKL, 65 P.S. §67.708(b)(17). In support, DOC submitted a declaration of Director Oppman as to the investigative nature of responsive records (OOR Declaration). Requester countered that aggregated data,[3] lacking any individual identifiers, is not protected.

---

[2] Under Section 708(b) of the RTKL, DOC cited the security exceptions in 65 P.S. §67.708(b)(1)(ii) (personal security) and 65 P.S. §67.708(b)(2) (public safety); the investigative exceptions in 65 P.S. §67.708(b)(16) (criminal investigations) and 65 P.S. §67.708(b)(17) (noncriminal investigations); 65 P.S. §67.708(b)(5) (medical records); 65 P.S. §67.708(b)(6) (personal identifiers); 65 P.S. §67.708(b)(10) (predecisional deliberations); and, 65 P.S. §67.708(b)(12) (work papers).

[3] "Aggregated data" is defined as: "A tabulation of data which relate to broad classes, groups or categories so that it is not possible to distinguish the properties of individuals within those classes, groups or categories." Section 102 of the RTKL, 65 P.S. §67.102.

3

Reasoning that DOC did not prove either exception, OOR directed disclosure of "all responsive records … within [30] days" (Disclosure Order).[4] See Haines & The Herald Standard v. Dep't of Corr., OOR Dkt. AP 2014-1695 (filed December 1, 2014) (Final Determination). As to Section 708(b)(17), OOR determined DOC did not show it performed an investigation attendant to its duties; rather, the investigation was ancillary and primarily performed by DOH. As to Section 708(b)(5), OOR concluded the exception did not apply. OOR noted "[DOC] has not asserted what records are being withheld pursuant to this exemption, and has not provided any evidence on appeal to explain why these records fall under this exemption." Id. at 7. Because Requester stated "she is not seeking any identifying information," id., the medical records exception did not apply on its face, and DOC did not meet its burden. OOR also explained de-identified information is not protected by the Health Insurance Portability and Accountability Act (HIPAA), which pertains only to covered entities. 45 C.F.R. §164.502(a). Importantly, DOC did not appeal.

After the deadline in the Disclosure Order passed, on January 6 or 7, 2015, DOC disclosed the following: statistics of inmates diagnosed with pulmonary and gastrointestinal ailments from 2010-2014, including a comparison across institutions; comparisons of natural death and cancer deaths; and, a spreadsheet of SCI-Fayette cancer deaths, by type of cancer, from 2003-2013, including comparison by institution from 2010-2013. DOC also submitted a declaration that it provided all responsive records, Post-Final Determination (FD) Declaration, 1/7/15). Pet'rs' Br. in Support at Ex. 9.

_____

[4] As DOC did not maintain staff health records, only inmate records were before OOR.

4

Subsequently, DOC disclosed the following: the Press Release; water analysis at SCI-Fayette; Dr. Noel's investigative summary; a redacted copy of Dr. Ginchereau's medical record review; a redacted list of cancer patients at SCI-Fayette (unspecified date); statistics regarding oncology treatments from November 2014; and, the DOH Investigative Results. DOC Br. in Support at 9.

Requester filed a petition for review asking this Court to compel DOC to disclose responsive records pursuant to the Disclosure Order. Requester also seeks attorney fees and civil penalties, alleging DOC committed bad faith.

DOC filed preliminary objections, which this Court overruled. Then, Requester filed a motion for judgment on the pleadings, which this Court denied. See Uniontown Newspapers v. Dep't of Corr. (Pa. Cmwlth., No. 66 M.D. 2015, filed December 7, 2015) (single j. op.). Senior Judge Oler held judgment on the pleadings was inappropriate because there was an issue of material fact as to whether DOC's interpretation of the Request was reasonable or whether DOC narrowed its response in bad faith.

In April 2016, Requester deposed Director Oppman and Dr. Noel as to DOC's maintenance of inmate diagnosis data, and how they obtained that data during the Investigation, and provided the data to DOH for its investigation.

The parties filed cross-motions for summary relief. Although both parties submit there are no disputes of material fact, they disagree as to whether DOC produced *all* responsive records in compliance with the Disclosure Order.

5

There are no stipulations identifying the records provided to date with particularity. Requester described records in Exhibit 16 to her brief in support of summary relief that remain outstanding, and which she claims are responsive to the Request.

## C. Contentions

Requester seeks judgment in her favor that DOC did not comply with the Disclosure Order because DOC did not provide a complete response or perform a good faith search as required by Section 901 of the RTKL, 65 P.S. §67.901. She asserts DOC has a duty to disclose inmate medical files in redacted form. In addition, as source material for the Investigation and DOH's Investigative Results, Requester contends disclosure of inmate medical files is in the public interest, such that DOC should have exercised its discretion to release them.

In opposition, DOC counters that it disclosed responsive records based on its interpretation of the Request. DOC refutes that inmate medical files are subject to the Request, which sought aggregated data. DOC challenges the allegations of bad faith as grounds for sanctions when it disclosed all responsive records. DOC maintains it cooperated with Requester throughout the process, providing records not comprised in the Request, like DOH's Investigative Results.

In its motion for summary relief, DOC alleges it disclosed all records responsive to the Request. DOC contends its construction of the Request as limited to illnesses inmates contracted at SCI-Fayette is reasonable. It asserts inmate medical files are not sought by the Request, and are exempt in their entirety. DOC also claims Requester did not identify any responsive records that remain undisclosed.

6

## II. Discussion

We are asked to discern DOC's compliance with the Disclosure Order. Requester argues responsive records remain outstanding, whereas DOC counters that it complied. In this posture, we do not question OOR's resolution of the merits. Com. v. Derry Twp., 351 A.2d 606, 610 (Pa. 1976) (failure to appeal agency order "foreclosed any attack on its content or validity in … enforcement proceedings").

In an enforcement action, Requester invokes jurisdiction ancillary[5] to our appellate jurisdiction under the RTKL. See Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cnty., 32 A.3d 639 (Pa. 2011) ("enforcement proceedings lie in … appellate jurisdiction; they are not appealable as of right under 42 Pa. C.S. §723(a)"); Pa. Human Relations Comm'n v. Scranton Sch. Dist., 507 A.2d 369 (Pa. 1986).

Relevant here, the RTKL vests this Court with jurisdiction to assess an agency's compliance by empowering "Chapter 13 courts" with the *exclusive* authority to impose sanctions in the form of attorney fees or civil penalties for denials of access after "ma[king] relevant factual findings." Bowling v. Office of Open Records, 75 A.3d 453, 458 (Pa. 2013); see Sections 1304 and 1305 of the RTKL, 65 P.S. §§67.1304, 67.1305. As a party to the underlying proceeding, Requester may seek enforcement of OOR's Disclosure Order through a petition to enforce. See, e.g., Dep't of Aging v. Lindberg, 469 A.2d 1012 (Pa. 1983) (a party other than issuing agency may seek enforcement of agency's order).

_____

[5] We may grant relief in the nature of mandamus in our ancillary jurisdiction. Avis Rent A Car Sys., Inc. v. Dep't of State, State Bd. of Vehicle Mfrs. Dealers & Salespersons, 507 A.2d 893 (Pa. Cmwlth. 1986).

## A. Legal Standard

Applications for summary relief are governed by Pa. R.A.P. 1532(b). It provides: "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Id. "An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute." Leach v. Turzai, 118 A.3d 1271, 1277 n.5 (Pa. Cmwlth. 2015) (en banc), aff'd, 141 A.3d 426 (Pa. 2016). "In ruling on application[s] for summary relief, we … enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law." Cent. Dauphin Sch. Dist. v. Dep't of Educ., 598 A.2d 1364, 1366-67 (Pa. Cmwlth. 1991).

An appellate court may grant relief in order to enforce OOR's final determinations. See, e.g., Wishnefsky v. Dep't of Corr. (Pa. Cmwlth., No. 582 M.D. 2014, filed July 8, 2015) (permitting relief in the nature of mandamus); Crockett v. Se. Pa. Transp. Auth. (Pa. Cmwlth., No. 2295 C.D. 2011, filed September 11, 2012) (same).

## B. Requester's Motion for Summary Relief
### 1. Compliance

Requester bears the burden to prove that DOC did not comply with OOR's order directing DOC to disclose "all responsive records" within 30 days. Notably, the language of the Disclosure Order, not that of the Request, is before us. The operative term there is "all responsive records," meaning records *OOR* deemed within the Request. Without confirming the composition of "responsive records," this Court is not in a position to compel disclosure or punish noncompliance.

8

## a. Scope of Request

Neither a party nor OOR may refashion the Request in the interest of providing responsive records. Dep't of Labor & Indus. v. Heltzel, 90 A.3d 823, 833 (Pa. Cmwlth. 2014) (en banc). A party's construction of a request such that there are no responsive records, other than those that are clearly protected, is improper. See Carey v. Dep't of Corr. (Carey II) (Pa. Cmwlth., No. 1348 C.D. 2012, July 3, 2013) (unreported); see also Carey v. Dep't of Corr. (Carey I); 61 A.3d 367 (Pa. Cmwlth. 2013), accord Shuler v. Dep't of Corr. (Pa. Cmwlth., No. 237 C.D. 2016, filed Nov. 1, 2016) (unreported), 2016 WL 6441187 (remanding to OOR to assess whether DOC provided all responsive records to request seeking records other than the privileged document DOC identified).

OOR's construction of the Request in the Final Determination governs our disposition of whether DOC complied with the Disclosure Order. Wishnefsky. DOC's interpretation of the Request pertains only to whether its denial of access reflects bad faith. As such, OOR's reasoning in the Final Determination is crucial.

### (i) Subject Matter

OOR construed the Request as one for data, without any identifying information. Final Determination at 3, 7. OOR found "[DOC] has not established that the Request seeks exempt medical records." Id. at 9. Indeed, the Request does not seek inmate medical files. Requester argued she sought "aggregated data, which is not subject to the majority of exemptions cited by [DOC]." Id. at 3. Based on the Final Determination, OOR construed the Request as seeking data of SCI-Fayette inmates' diagnoses, by type of ailment and number of inmates afflicted.

9

In contrast to OOR's construction, DOC construed the Request to require review of inmate medical files: "to determine (1) whether the inmate has cancer or a respiratory ailment[;] (2) when the inmate was diagnosed with cancer or a respiratory ailment[;] and[,] (3) whether the inmate was at SCI[-]Fayette when he was diagnosed with cancer or a respiratory ailment." DOC Br. in Op. at 34. In other words, DOC construed the Request as seeking data on inmates first diagnosed while at SCI-Fayette. As a result, DOC argued the Request required the reviewer to make a medical judgment tying an inmate's diagnosis to the institution. Id.

Throughout this enforcement proceeding, DOC emphasized the phrase "contracted at." DOC's construction of the Request as seeking only data of inmates who "contracted" ailments during their incarceration at SCI-Fayette, has some basis in the language of the Request; however, in an enforcement action, we focus on the unappealed Final Determination and the language of the Disclosure Order. Derry Twp.; Wishnefsky. DOC's construction is too limited given OOR's reasoning in the Final Determination.

In particular, OOR repeated that Requester did not seek identifying information. Final Determination at 7-9. Also, OOR did not focus on the word "contracted" in the Request. Id. Thus, there is no support for DOC's conclusion that it was ordered to disclose only information about inmates who first "contracted" a disease while at the specific facility.

Further, DOC's construction is inconsistent with the declaration Director Oppman submitted to OOR acknowledging that DOC had responsive

records to which the noncriminal investigation exception applied. Specifically, he attested "[DOC] has generated the records that [Requester] requests; however, those records were created as part of an investigation that [DOH] is conducting." OOR Declaration at ¶6 (emphasis added) (Pet'rs' Br. at Ex. 8). OOR rejected DOC's noncriminal investigative defense, and it is "those records" that must be disclosed.

Because the parties misplace emphasis on their interpretations of the Request, as opposed to OOR's construction in the Final Determination, we are unable to grant summary relief in Requester's favor as to DOC's noncompliance. Nonetheless, so as to address DOC's claim for summary relief, we reject DOC's narrow response, and we hold inmate diagnoses data, particularly as to types of illness and number of inmates so diagnosed, are comprised in the Disclosure Order.

### (ii) Request Date

Because it is apparent the parties did not regard the Request date as relevant, we underscore that DOC may only be culpable for failing to disclose records that existed as of the date of the Request. Records post-dating the Request are not "responsive" regardless of their relevance to the subject matter.

Under Section 705 of the RTKL (relating to creation of a record), "the standard is whether such a record is in existence and in possession of the Commonwealth agency at the time of the right-to-know request." Paint Twp. v. Clark, 109 A.3d 796, 805 (Pa. Cmwlth. 2015) (emphasis added) (citation omitted). However, compiling records from a database is not "creation of a record." Dep't of Envtl. Prot. v. Cole, 52 A.3d 541 (Pa. Cmwlth. 2012).

11

The Request date (9/25/14) defines the universe of responsive records, as DOC only has a duty to disclose records created on or before September 25, 2014. DOC had no obligation to disclose records created after the Request date, such as the Press Release, 12/31/15, or the DOH Investigative Results,[6] as their creation date excludes them from the confines of "responsive records." Consequently, the Disclosure Order only encompasses records that existed as of the Request date.

### b. Types of Responsive Records

Requester identifies three types of responsive records DOC withheld in violation of the Disclosure Order: (i) records pre-existing the Investigation; (ii) Investigation-related records; and, (iii) inmate medical files. We review each in turn.

### (i) Pre-existing Investigation

Requester asserts that DOC deliberately withheld responsive records that were not involved in its Investigation. Specifically, Requester identifies five sources of records: (1) a database of treatment at Chronic Care Clinics, which may be isolated by institution (PTrax); (2) a database of cancer patient inmates, including historical data (Oncology DB); (3) inmate grievances logged with the Bureau of Health Care Services (Grievances); (4) mortality lists by facility, showing cause of death (Mortality Lists); and, (5) reports from DOC's pharmacy contractor, showing number of inmates treating for pulmonary and gastrointestinal medications (Contractor Reports). Pet'rs' Br. at 28-31. Notably, DOC did not disclaim that such records were responsive, or that it disclosed records from these five sources.

---

[6] DOC's point that Requester sought records after issuance of the Final Determination is well-taken, and such records were gratuitously provided. Requester may submit another request for records created after the date of the Request.

12

Other than the Grievances, all of these records are fairly comprised within the Disclosure Order such that DOC had a duty to disclose them. Indeed, the submissions reflect that a Mortality List was disclosed, as well as a redacted copy of the Oncology DB for a limited period. However, it is not possible to discern at this stage whether DOC disclosed *all* responsive pre-existing Investigation records.

### (ii) Investigation-related Records

Requester contends DOC withheld responsive records described in Director Oppman's OOR Declaration and deposition pertaining to the Investigation. Requester identifies emails between DOH and DOC related to their investigations. Such emails, if containing inmate diagnosis data, qualify as "responsive records."

Adding complexity to this Court's task, neither party is definitive about when records were created during the Investigation. Since the Investigation began prior to the Request date, and continued thereafter, it is important to determine the date of investigative records. The DOH Investigative Results show DOC reported inmate diagnoses to DOH that formed the basis for DOH's findings. These records are at the crux of the Request, and it is these records, notwithstanding their alleged investigative content, that – if existing as of the date of the Request – DOC had a duty to disclose within 30 days of OOR's order.

### (iii) Inmate Medical Files

Requester also claims DOC has a duty to disclose inmate medical files, in redacted form to remove identifiers, because they were the source material for the data. We disagree for two reasons.

One, inmate medical files are not fairly comprised within the Request. Repeatedly, Requester disclaimed any interest in individual medical files, emphasizing that the Request pertained to data or reports in aggregate form. OOR's reasoning in the Final Determination relied on the Requester's disinterest in individual medical files, and emphasized that Requester sought data. Requester now claims entitlement to redacted medical files because the physician deponents explained they contain diagnoses information. Requester may not change her Request in subsequent legal proceedings. Heltzel; Pa. State Police v. Office of Open Records (George), 995 A.2d 515 (Pa. Cmwlth. 2010) (noting parties may limit a request by stipulation).

Moreover, diagnosis information located in multiple inmate medical files does not constitute data of inmates' diagnoses by type unless DOC compiles the information from each file. DOC has no duty to perform research in response to a RTKL request to compile the diagnoses data sought. Dep't of Corr. v. Disability Rights Network of Pa., 35 A.3d 830 (Pa. Cmwlth. 2012). That is tantamount to creation of a record, contrary to Section 705 of the RTKL, 65 P.S. §67.705.

Two, an individual's medical file is exempt under Section 708(b)(5) of the RTKL. Section 708(b)(5) specifically exempts the following:

> A record of an individual's medical, psychiatric or psychological history or disability status, including an evaluation, consultation, prescription, diagnosis or treatment; results of tests, including drug tests; enrollment in a health care program or program designed for participation by persons with disabilities, including vocation rehabilitation, workers' compensation and unemployment compensation; or related information that would disclose individually identifiable health information.

14

65 P.S. §67.708(b)(5) (emphasis added). However, medical incident/injury *reports* are not protected under Section 708(b)(5) of the RTKL. See Dep't of Corr. v. St. Hilaire, 128 A.3d 859 (Pa. Cmwlth. 2015). DOC may be required to redact information from *reports*, as distinguished from inmates' *medical files*. Id. An inmate's medical file is exempt, and not subject to redaction. Williams v. Dep't of Corr. (Pa. Cmwlth., No. 2068 C.D. 2015, filed June 13, 2016) (unreported).

Further, individual medical files, protected under Section 708(b)(5), are one type of record to which Requester's aggregated data defense does not apply. Section 708(d) of the RTKL provides: "The exceptions set forth in [Section 708(b)] shall not apply to aggregated data maintained or received by an agency, except for data protected under subsection[s] (b)(1), (2), (3), (4), or (5)." 65 P.S. §67.708(d) (emphasis added). Therefore, information protected by Section 708(b)(5) remains protected.

### c. Summary

In sum, there is a dispute of material fact as to whether DOC provided "all responsive records" as mandated by OOR's Disclosure Order. From the submissions, it appears that some Investigation-related records and records pre-existing the Investigation remain outstanding. As to those records, we deny Requester's motion for summary relief without prejudice, so the enforcement action may proceed to further develop the record as to the status of these records.

As to inmate medical files, we deny Requester's motion for summary relief with prejudice, and we grant DOC's motion for summary relief to the extent

15

it seeks judgment that it is not required to disclose inmate medical files, even in redacted form, or to create new[7] records compiling data from those inmate files.

In the interest of limiting the matters that may be the subject of stipulations or further fact-finding, we determine some of the records Requester identified in Exhibit 16 to her brief are not comprised within the Disclosure Order. As such, DOC has no duty to disclose them.[8]

## 2. Bad Faith

Requester also asks this Court to award attorney fees and costs, and to impose civil penalties based on DOC's noncompliance and bad faith. Bad faith may constitute grounds for an award of attorney fees under Section 1304(a) of the RTKL, 65 P.S. §67.1304, or for the imposition of civil penalties under Section 1305 of the RTKL, 65 P.S. §67.1305. Evidence of bad faith is required. Barkeyville Borough v. Stearns, 35 A.3d 91 (Pa. Cmwlth. 2012).

Here, Requester claims three bases for bad faith: (1) DOC's untimely disclosure beyond the 30-day deadline in OOR's order; (2) DOC's failure to perform a good faith search of records as required by Section 901 of the RTKL; and, (3) DOC's continued nondisclosure of responsive records.

---

[7] In the event DOC created any records prior to the Request date from its review of inmate medical files when conducting the Investigation, those records are responsive, and are not excluded under Section 705 of the RTKL, 65 P.S. §67.705 (creation of a record).

[8] For example, drafts of the Press Release that do not contain data of inmate diagnoses are not responsive records. Emails exchanged during the Investigation are responsive *only to the extent they contain diagnoses data*. Grievances were not addressed in the Final Determination; therefore, grievances are not contemplated in the Disclosure Order.

16

As to untimeliness, there is no dispute DOC provided responsive records a few days after the 30-day deadline. Although untimeliness may merit a finding of bad faith, such a short lapse by itself may be *de minimis*.

As to compliance with Section 901 of the RTKL, DOC was required to make a good faith effort to determine whether it had possession, custody or control of responsive records. 65 P.S. §67.901; Chambersburg Area Sch. Dist. v. Dorsey, 97 A.3d 1281 (Pa. Cmwlth. 2014) (remanding to trial court to assess bad faith when school district discovered additional 3,500+ pages of records after first remand to trial court; trial court erred in not supplementing record as to bad faith). An agency's failure to perform a good faith search in response to a RTKL request may be grounds for bad faith. Id.

At this stage, the submissions suggest DOC did not comply with Section 901.[9] DOC discovered responsive records during the Investigation, as opposed to when it received the Request, raising the question as to the thoroughness of its initial search. Also, DOC's narrow construction of its duty under the Disclosure Order appears self-serving, similar to its responses in appeals whereby it construed a request as seeking a record that is clearly exempt. See, e.g., Carey II; Shuler.

---

[9] Requester alleges Director Oppman admitted during deposition that he did no search in response to the Request. However, his testimony is less than clear because the questions pertained to both the search performed for records in response to the Request, and to the Investigation. Also, Requester's position presumes Director Oppman bore responsibility for responding to the Request.

As to compliance with OOR's Disclosure Order, it is evident that DOC did not disclose responsive records that pre-existed the "No Escape" Report, the Request date, and that were created as part of its Investigation. The deposition testimony revealed that DOC maintains inmate diagnosis data in PTrax and the Oncology DB, and that DOC receives Contractor Reports pertaining to types of inmate illnesses. These records fall within the Disclosure Order. Yet, it appears that these records remain undisclosed.

Nonetheless, bad faith is a matter of degree, implicating the extent of noncompliance. As the extent of DOC's noncompliance is unclear, we decline to make findings of bad faith at this time. Further, the duration DOC withheld responsive records may also weigh in favor of awarding civil penalties. Accordingly, we reserve judgment on sanctions until after disposition of the merits.

## C. DOC's Motion for Summary Relief

In its motion for summary relief, DOC claims it is entitled to judgment in its favor because it reasonably construed the Request, and it provided all responsive records within its possession. Accordingly, its conduct does not warrant sanctions. DOC also argues it has no duty to provide inmate medical files, or to create a record compiling the diagnosis data from those files.

As explained above, we reject DOC's contention that it reasonably construed the Request. DOC misplaced its focus on the language of the Request, when its compliance is judged by the parameters of the Disclosure Order in the enforcement stage.

18

In addressing Requester's cross-motion, we explained our reasons for granting judgment in DOC's favor that it has no duty to disclose inmate medical files or to create new records by compiling the diagnoses data contained in medical files.

Although additional fact-finding is necessary to determine Requester's entitlement to relief, it is clear on the present submissions that DOC is not entitled to judgment in its favor that it complied with the Disclosure Order.

To establish that it provided all responsive records, DOC submitted the Post-FD Declaration. Therein, Director Oppman attested "[DOC] as [sic] previously provided records to [Requester] regarding this [R]equest." Id. at ¶4 (Pet'rs' Br. at Ex. 9). Without describing or enumerating the records provided to Requester, and without explaining when the records were provided, Director Oppman states, "[b]eyond the records previously provided to [Requester], [DOC] does not have within its custody, possession, or control, *reports of illnesses contracted at SCI-Fayette*, by type and quantity and comparison of illness rates at other state correctional institutions." Id. at ¶6 (emphasis added).

As the responding agency, DOC bears the burden of proving that no additional responsive records exist. Hodges v. Dep't of Health, 29 A.3d 1190 (Pa. Cmwlth. 2010); Moore v. Office of Open Records, 992 A.2d 907 (Pa. Cmwlth. 2010). "[A]n agency may satisfy its burden of proof that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." Hodges. In similar

19

cases, DOC has provided either sworn or unsworn affidavits in order to satisfy its burden of proving it does not possess requested records. See Sturgis v. Dep't of Corr., 96 A.3d 445 (Pa. Cmwlth. 2014). In the absence of any competent evidence that the agency acted in bad faith or that the agency records exist, "the averments in [an agency's] affidavits should be accepted as true." Smith Butz, LLC v. Pa. Dep't of Envtl. Prot., 142 A.3d 941, 945 (Pa. Cmwlth. 2016) (quoting McGowan v. Dep't of Envtl. Prot., 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014)).

Because DOC narrowly construed the Disclosure Order, and because its declarations track its narrow construction, DOC did not establish it provided all responsive records. As such, DOC is not entitled to judgment in its favor. Leach. Moreover, there is some evidence of bad faith and other valid grounds to discount DOC's declarations. Accordingly, we deny DOC's request for summary relief as to its compliance.

### III. Conclusion

There is a genuine issue of material fact as to whether DOC provided all responsive records because DOC did not disclose responsive records that pre-existed the Investigation and the Request (i.e., PTrax, Oncology DB, Contractor Reports). Further, both parties disregarded the importance of the Request date. As a result, there is no indication when the Investigation-related records (such as emails) were created. To limit the issues for trial, the Court requests stipulations within the next 90 days as to what documents DOC provided, the creation date of the provided documents (if known), and when the documents were provided, so as

20

to limit fact-finding to only the pre-existing records and Investigation-related records that are outstanding.

To allow full development of the record, this matter shall proceed through trial, at which Requester bears the burden of proving DOC's noncompliance and bad faith. To the extent DOC contends no responsive records exist beyond those already produced in response to the Disclosure Order, DOC bears the burden of proving this defense.

_____

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uniontown Newspapers, Inc., d/b/a : 
The Herald Standard; and Christine : 
Haines, : 
                  Petitioners :   No. 66 M.D. 2015
                       : 
         v. : 
                       : 
Pennsylvania Department of : 
Corrections, : 
                 Respondent : 

# O R D E R

AND NOW, this 19th day of December, 2016, it is **ORDERED** and **DECREED** as follows:

Petitioners' motion for summary relief is **DENIED**, without prejudice to allow the enforcement action to proceed for further fact-finding regarding Respondent's disclosure of "all responsive records," narrowed to exclude inmate medical files, even in redacted form, or creation of new records from inmate medical files, and limited to: (1) the five types of pre-existing Investigation records described in the accompanying opinion; and, (2) the Investigation-related records, including but not limited to those records to which Director Oppman referred in his submission to the Office of Open Records (OOR);

Respondent's motion for summary relief is **GRANTED IN PART**, as to the disclosure of inmate medical files and creation of a record claims; and **DENIED IN PART**, as to its compliance with OOR's order.

**AND**, because the extent of Respondent's noncompliance is not yet determined, this Court reserves judgment as to imposing statutory sanctions until disposition of the merits;

**AND FURTHER**, the parties are directed to submit stipulated facts identifying the records disclosed, date of record (if known) and the date of disclosure, and identifying the "Investigation-related" records to which Director Oppman referred in the OOR submissions; as well as stipulated facts identifying with more detail the 5 categories of pre-existing Investigation records, so that it is clear what remains outstanding by category within **90 days** of this order.

_____
ROBERT SIMPSON, Judge