# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Uniontown Newspapers, Inc., d/b/a The Herald Standard; and Christine Haines, | : : : | |
| Petitioners | : : | No. 66 M.D. 2015 |
| v. | : : | Heard: July 31, 2018 |
| Pennsylvania Department of Corrections, | : : : | |
| Respondent | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge

**OPINION**
**BY JUDGE SIMPSON**                    **FILED: October 29, 2018**

Before me is Uniontown Newspapers, Inc., d/b/a The Herald Standard's (Requester) petition for attorney fees as part of its enforcement action against the Department of Corrections (DOC) for violating the Right-to-Know Law (RTKL)[1] (Fee Petition). Requester's Fee Petition relied on my findings and conclusion that DOC committed bad faith under the RTKL. See Uniontown Newspapers, Inc. v. Dep't of Corr., 185 A.3d 1161 (Pa. Cmwlth. 2018) (single j. op.) (Bad Faith Opinion).[2] Pursuant to Section 1304(a) of the RTKL, 65 P.S. §67.1304(a), following a trial as to reasonable attorney fees, and based on the record and the challenges DOC raised, I award Requester **$118,458.37**, a portion of the fees claimed. This award is limited to fees supported by the record and corresponds to Requester's successful advocacy.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101–67.3104.

[2] As it was ancillary to our appellate jurisdiction under Chapter 13 of the RTKL, the Supreme Court dismissed the Department of Corrections' (DOC) direct appeal. See Order, 9/4/18 (Pa., No. 20 MAP 2018). DOC then petitioned for allowance of appeal, which is pending at 561 MAL 2018.

## I. Background

Because the background is adequately set forth in the published Bad Faith Opinion, I incorporate it by reference and adopt the short forms used therein.

Pursuant to the Bad Faith Opinion, Requester submitted notice of its intent to seek attorney fees under the RTKL and the Costs Act, 42 Pa. C.S. §2503. It appended summaries of legal invoices to its Fee Petition. I then scheduled a hearing limited to the attorney fee issue, requesting evidence as to what constitutes "reasonable attorney fees" under the RTKL. See Pa. Cmwlth. Order, 6/28/18.

At the hearing, Requester presented testimony by one fact witness (Publisher) regarding its payment of legal invoices for services performed. Publisher testified Requester engaged Saul Ewing Arnstein & Lehr LLP (Saul Ewing) as its counsel for the purpose of enforcing OOR's Disclosure Order. Publisher testified as to his review and payment of fees and costs set forth in legal invoices corresponding to 2015, 2016, 2017 and 2018, through June 30, 2018 (collectively, Legal Invoices). The Legal Invoices were admitted into evidence in redacted form, as well as under seal in unredacted form. The Legal Invoices document the time spent and work performed by Charles Kelly, Esquire, (Attorney Kelly), a partner at Saul Ewing, and Michael Joyce, Esquire (Attorney Joyce), an associate at the same firm.

Attorney Kelly and Attorney Joyce represented Requester throughout this litigation. With its post-trial brief, Requester submitted affidavits executed by Attorney Kelly and Attorney Joyce as to their experience, hourly rates, and opinions as to the reasonableness of their fees (collectively, Counsel Affidavits).

2

In his affidavit, Attorney Kelly attested he represented newspapers and media companies for nearly 30 years on several issues, including open records. See Kelly Affidavit at ¶6. Attorney Kelly served as counsel for Requester since 2000. As lead counsel, Attorney Kelly supervised Attorney Joyce's work. Also, as the responsible attorney, he reviewed the Legal Invoices. Attorney Kelly did not bill Requester his regular hourly billable rate, which ranged from $565.00 in 2015 to $635.00 in 2018. Rather, Requester paid a discounted hourly rate of $450.00 in 2015 and 2016, and $500.00 in 2017 and 2018. As to the reasonableness of these rates, he stated: "[i]n my experience, my hourly rates are on-par with, or oftentimes lower than, the hourly billing rates of my peers with similar experience." Id. at ¶21.

Attorney Joyce attested he practiced at Saul Ewing for five years, with a primary focus on commercial litigation. See Joyce Affidavit at ¶4. He also has a niche practice counseling "newspapers and media companies on a variety of topics, including First Amendment and defamation issues." Id. at ¶5. This enforcement litigation constitutes his first experience with respect to the RTKL. Notably, Attorney Joyce does not indicate when he graduated law school or when he became licensed as an attorney. Id.

Attorney Joyce's hourly billable rate was $295.00 in 2015, $320.00 in 2016, $350.00 in 2017, and $375.00 in 2018. He attests that these are his standard, as opposed to discounted rates, and that Requester paid the invoices for his services billed at these rates. The only evidence as to the reasonableness of his rates is his statement: "In my experience, my hourly rates are on-par with, or oftentimes lower than, the hourly billing rates of my peers with similar experience." Id. at ¶12.

3

Requester submitted no evidence as to the reasonableness of the fees claimed, other than the Counsel Affidavits. Requester also submitted no evidence of its fees in July or August 2018 when it submitted its post-trial brief.[3]

DOC submitted its post-trial brief challenging the fees claimed to the extent the fees related to matters on which Requester did not prevail.

## II. Legal Basis for Award of Attorney Fees

The legal basis for awarding attorney fees in a RTKL enforcement action filed against a Commonwealth agency presents an issue of first impression.

Before considering the statutory sources Requester cited as grounds for recovering attorney fees, I confirm this Court's jurisdiction to award attorney fees for bad faith incident to our appellate jurisdiction in Chapter 13 of the RTKL, 65 P.S. §§67.1301-67.1305. See Uniontown Newspapers, Inc. v. Dep't of Corr., 151 A.3d 1196, 1202 (Pa. Cmwlth. 2016) (Summary Relief Opinion) (citing Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cty., 32 A.3d 639 (Pa. 2011) ("enforcement proceedings lie in … appellate jurisdiction …"); Pa. Human Relations Comm'n v. Scranton Sch. Dist. 507 A.2d 369 (Pa. 1986)). The statutory scheme presumes an appeal of an agency's denial of access pursuant to Chapter 11 of the RTKL, 65 P.S. §67.1101.

Here, Requester was successful in its Chapter 11 appeal. Premised on that success, Requester enlisted this Court's ancillary appellate jurisdiction to enforce OOR's final determination in its favor. Id.

---

[3] In its post-trial brief Requester attempts to invoke the common law remedy of contempt. As Requester gave no notice that it sought such relief prior to trial, I do not consider it.

4

First, I carefully analyze the statutory basis for reasonable attorney fees contained in Section 1304(a) of the RTKL, 65 P.S. §67.1304(a).

## A. Section 1304(a) of the RTKL

Section 1304(a) of the RTKL, 65 P.S.§67.1304(a) "allows a court to award attorney fees if the court reverses a final determination or grants access when either: (1) an agency acted with willful or wanton disregard of the right to access in bad faith; or, (2) an agency's denial was not based on a reasonable interpretation of law." Dep't of Educ. v. Bagwell, 131 A.3d 638, 660-61 (Pa. Cmwlth. 2015) (emphasis added). Section 1304(a) of the RTKL provides in full:

> (a) **Reversal of agency determination**.– If a court reverses the final determination of the appeals officer or grants access after a request for access was deemed denied,[4] the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:
>
> > (1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or
> >
> > (2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

Id. (underscore added). The heading of Section 1304(a), "Reversal of agency determination," and phrasing in subsection (a)(2) indicates reversal of the receiving agency's determination denying access. 65 P.S. §67.1304(a)(2) (emphasis added).

---

[4] Attorney fees are recoverable when an access request is deemed denied. Under the RTKL, "deemed denied" means a failure to respond within a statutory deadline. McClintock v. Coatesville Area Sch. Dist., 74 A.3d 378 (Pa. Cmwlth. 2013).

5

Significantly, the term "final determination" is used as to the final determination of the appeals officer, and of the receiving agency in the same section. Using the term "final determination" two different ways renders the meaning of "final determination" in Section 1304(a) ambiguous. Although it may be construed as the final determination an appeals officer issues under Chapter 11 of the RTKL, it may also fairly be construed as referring to the receiving agency's determination denying access. Because the meaning of this term is crucial to the provision, and it is capable of two possible constructions, Section 1304(a) is ambiguous. See Office of Governor v. Donahue, 59 A.3d 1165 (Pa. Cmwlth. 2013), aff'd, 98 A.3d 1223 (Pa. 2014). Accordingly, I enlist principles of statutory interpretation to aid my construction. See Statutory Construction Act of 1972, 1 Pa. C.S. §§1501-1991.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Pa. Gaming Control Bd. v. Office of Open Records, 103 A.3d 1276, 1284 (Pa. 2014) (quoting 1 Pa. C.S. §1921(a)). In ascertaining legislative intent, the provision at issue is to be read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute." Id. at 1285.

Further, "[i]t is presumed '[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.'" McGrath v. Bureau of Prof'l & Occ. Affairs, 146 A.3d 310, 316 (Pa. Cmwlth. 2016) (quoting 1 Pa. C.S. §1922(1)). The Courts "presume … that the General Assembly intends the entire statute to be effective and certain." Bowling v. Office of Open Records 75 A.3d 453, 466 (Pa. 2013).

6

"[W]hen the General Assembly replaced the [former RTKA] in 2009 with the current RTKL, it 'significantly expanded public access to governmental records ... with the goal of promoting government transparency.'" Pa. State Police v. Grove, 161 A.3d 877, 892 (Pa. 2017) (citation omitted); Bowling, 75 A.3d at 457 (the RTKL "significantly broadened access to public records."). Courts "are obliged to liberally construe the [RTKL] to effectuate its salutary purpose of promoting 'access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'" Dep't of Pub. Welfare v. Eiseman, 125 A.3d 19, 29 (Pa. 2015) (citation omitted).

Relevant here, the attorney fees provision under the current RTKL mirrors the equivalent provision under the former RTKA[5] in some material respects. The RTKA fees provision, also titled "Reversal of agency determination," stated:

> If a court <u>reverses an agency's final determination</u> the court may award reasonable attorney's fees and costs of litigation or an appropriate portion thereof, to a requester if the court finds either:
>
> (1) <u>the agency</u> willfully or with wanton disregard <u>deprived the requester of access to a public record subject to access</u> under the provisions of this act; or
>
> (2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

Section 6 of the Act of June 29, 2002, 65 P.S. §66.4-1(a)(repealed). Like the fees provision in the RTKA, Section 1304(a) of the RTKL applies to the requester only. Also, it provides this remedy when the receiving agency deprived a requester of access "willfully or with wanton disregard." Id.

---

[5] Act of June 21, 1957, P.L. 390, <u>as</u> amended, 65 P.S. §§66.1-66.9, <u>repealed by</u>, Section 3102(2)(ii) of the RTKL, 65 P.S. §67.3102(2)(ii). For clarity, I refer to the prior law as the RTKA.

However, the current RTKL added "bad faith" as another basis for recovering attorney fees. The current RTKL also changed the term "agency's final determination" in subsection (a)(1) to "appeals officer's final determination." Compare 65 P.S. §66.4-1(a) (repealed), with 65 P.S. §65.67.1304(a)(1).[6]

The issue before a Chapter 13 Court in analyzing Section 1304(a) is whether attorney fees are reserved for when the Court reverses an *appeals officer's* determination, as opposed to when a receiving agency's determination is reversed. There are several reasons Section 1304(a) of the RTKL should not be construed as requiring the *reversal* of an *appeals officer's* determination by a court. Foremost, such an interpretation is unreasonable and would yield an absurd result.

Construing Section 1304(a)(1) to require *reversal* of an appeals officer's determination would penalize a requester for prevailing in its Chapter 11 appeal. That is because when an appeals officer recognizes a requester's access rights in the administrative proceeding, *reversing* that appeals officer's determination would be adverse to the requester.

If a *court's* reversal of an appeals officer's final determination is a prerequisite for requester's recovery under Section 1304(a), the agency accused of bad faith may preclude this remedy by electing not to appeal the final determination to a Chapter 13 Court. Thus, the most egregious of agency conduct, and the denials of access recognized as improper during the Chapter 11 appeal, could go unchecked.

---

[6] Presumably this change was to account for the statutory appeal process under Chapter 11 of the RTKL, through which a requester challenges an agency's determination.

Consider the current case. DOC disregarded its disclosure duties during each stage of the RTKL process and did not comply with the appeals officer's final determination in Requester's favor. Because it obtained the Disclosure Order, Requester had no interest in this Court reversing the appeals officer's final determination. However, DOC elected to not appeal, yet did not discover or disclose all responsive records until after years of litigation. Requester here advocated the public interest in a matter of public health affecting a captive population. Its recovery of fees should not turn on whether a noncompliant agency appealed to this Court.

In the context of "bad faith," if an agency denied access improperly, it is more likely that an appeals officer would decide disclosure in a requester's favor. Presuming an agency committed bad faith, and disregarded the RTKL process at each stage as DOC did here, then on appeal, a Chapter 13 Court is more likely to *affirm* an appeals officer's determination in a requester's favor than to reverse it.

Further, a requester's access to fees should not hinge on the outcome of an appeals officer's determination. In defining this Court's role under Chapter 13, our Supreme Court held: "Section 1304[a](1) and (2) establish that the determination of the appeals officer is to be given <u>no deference</u> …" for the counsel fees and penalty phase. <u>Bowling</u>, 75 A.3d at 470. Thus, an appeals officer's determination should not constrain a Chapter 13 Court's ability to award attorney fees to a requester pursuant to Section 1304(a)(1) of the RTKL after making a finding of bad faith.

9

Taking a cue from our highest court,[7] I also look to cases construing the RTKA for guidance in construing the fees provision. This Court construed the fee provision in the RTKA to require reversal of an *agency's* final determination. See Parsons v. Pa. Higher Educ. Assist. Agency (PHEAA), 910 A.2d 177 (Pa. Cmwlth.) (en banc), appeal denied, 917 A.2d 316 (Pa. 2006). That construction is equally appropriate under the RTKL.

In light of the prior provision and the ambiguity of the current provision, this Court construes Section 1304(a)(1) of the RTKL as permitting recovery of attorney fees when the receiving agency determination is reversed, and it deprived a requester of access to records in bad faith. Bagwell. This construction gives effect to the legislative intent for the RTKL to provide more transparency than the RTKA. It provides an impetus for an agency to comply with an appeals officer's final determination in a requester's favor and provides an incentive to requesters to litigate access and bad faith. Moreover, a fee award holds an agency accountable for its conduct during the RTKL process, as well as for its determination denying access.

Here, this Court found that DOC, the receiving agency, denied access willfully and with knowing disregard of Requester's rights to access, and otherwise acted in bad faith.[8] See Bad Faith Opinion. This Court also enforced the reversal of

---

[7] Our Supreme Court relied on case law construing the RTKA when construing the current RTKL. See, e.g., Dep't of Pub. Welfare v. Eiseman, 125 A.3d 19 (Pa. 2015) (citing Sapp Roofing Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 12, 713 A.2d 627, 629 (1998) (plurality)); see also PSEA v. DCED, 148 A.3d 142 (Pa. 2016) (relying on Sapp Roofing and PSU v. SERB, 935 A.2d 530 (Pa. 2007) as upholding a privacy right in certain personal identifiers).

[8] This is the first time a requester asked this Court to apply Section 1304(a) to a request for counsel fees based on a Commonwealth agency's bad faith in the context of an enforcement action. That this Court previously quoted the part of Section 1304(a) stating, "If a court reverses the final

DOC's denial. Accordingly, Requester qualifies for an award of reasonable attorney fees under Section 1304(a)(1) of the RTKL, 65 P.S. §67.1304(a)(1).

### 2. Costs Act

The Costs Act, 42 Pa. C.S. §2503(7), permits recovery for attorney fees when the relevant statutory scheme does not so provide. See Newspaper Holdings, Inc. v. New Castle Area Sch. Dist., 911 A.2d 644, 649 n.13 (Pa. Cmwlth. 2006). Because the RTKL, through Section 1304(a), allows recovery of reasonable attorney fees, I do not address whether Requester is entitled to fees under the Costs Act.[9]

### B. "Reasonable Attorney Fees"

As fact-finders, "Chapter 13 [C]ourts may award attorneys' fees to … requesters or [impose] civil penalties upon agencies after the court has made relevant factual findings supporting such awards … or penalties." Bowling, 75 A.3d at 458.

---

determination of the appeals officer" does not elevate that phrase to a prerequisite for recovery. See, e.g., City of Phila. v. Ali (Pa. Cmwlth., No. 2385 C.D. 2014, filed November 12, 2015), 2015 WL 7200945 (unreported). Before now, this Court had not held a trial on bad faith that established a Commonwealth agency's bad faith. Cases where this Court recognized the receiving agency did not perform its Chapter 9 duties, and thus disregarded a requester's access rights, involved local agencies, where a common pleas court served as the Chapter 13 Court. Chambersburg Area Sch. Dist. v. Dorsey, 97 A.3d 1281 (Pa. Cmwlth. 2014) (receiving agency did not disclose responsive records until served with discovery such that it withheld 3,500 records during each stage of RTKL process); Staub v. City of Wilkes-Barre & LAG Towing, Inc. (Pa. Cmwlth., No. 2140 C.D. 2012, filed October 3, 2013), 2013 WL 5520705 (unreported) (this Court affirmed trial court order awarding attorney fees when receiving agency did not confirm nonexistence of records with third party contractor in possession of records).

[9] The Costs Act permits fees when a litigant engages in bad faith, defined as vexatious, obdurate or dilatory conduct. Berg v. Georgetown Builders, Inc., 822 A.2d 810 (Pa. Super. 2003). Requester bore the burden to prove existence of one of these conditions. Id.
    In Requester's estimation, fees following the Summary Relief Opinion ($114,359.61) are recoverable under the Costs Act based on DOC's delay in withholding records after this Court specified its duty to disclose certain categories of records. See Pet'rs' Post-trial Br. at 14.

This Court made the requisite findings as to attorney fees recoverable under Chapter 13 incident to our jurisdiction over Chapter 11 appeals. Id.; see Scranton Sch. Dist.

Having concluded attorney fees are recoverable under Section 1304(a)(1) of the RTKL, I consider the extent to which the fees claimed here, $215,190.75, qualify as "reasonable attorney fees" thereunder. 65 P.S. §67.1304(a)(1).

In construing "reasonable attorney fees" under the RTKL, I am guided by precedent construing that term generally. "To determine the reasonableness of attorney's fees and costs it is necessary to look at the amount of work performed, the character of services rendered, the difficulty of the problems involved, and the professional skill and standing of the attorney in the profession." Twp. of S. Whitehall v. Karoly, 891 A.2d 780, 784 (Pa. Cmwlth. 2006) (citing In re Trust Estate of LaRocca, 246 A.2d 337 (Pa. 1968)). The amount of a fee award also depends on the following factors: the importance of the litigation; amount of money or value of the right involved; the degree of responsibility incurred; the results counsel obtained; and the client's ability to pay a reasonable fee for services rendered. LaRocca. Courts may also consider the nature and length of this litigation, the responsibilities of the parties in affecting its length, and competitiveness of the rate and the time expended. Arches Condo. Ass'n v. Robinson, 131 A.3d 122 (Pa. Cmwlth. 2015).

There is no requirement that a trial court do a line-by-line analysis of a legal invoice to determine its reasonableness. Twp. of Millcreek v. Angela Cres Trust, 142 A.3d 948 (Pa. Cmwlth. 2016). A fact-finder "[is] not required to delineate

with specificity … every reason for every disallowance of every aspect of the fee request." In re Appeal of Silverman, 90 A.3d 771, 785 (Pa. Cmwlth. 2014).

When a statute explicitly authorizes fees, courts also consider the purpose of the statutory scheme and whether a fee award promotes the statutory purpose. Dep't of Envtl. Res. v. PBS Coals, Inc., 677 A.2d 868 (Pa. Cmwlth. 1996) (analyzing intent of fee-shifting provisions). The purpose of Section 1304 fee awards is to restore litigants to the position they were in prior to filing a petition for review. Office of the Dist. Att'y of Phila. v. Bagwell, 155 A.3d 1119 (Pa. Cmwlth. 2017) (in contrast to deterrent purpose of Section 1305 civil penalties).

In addition, attorney fees are recoverable under Section 1304(a) to protect the public right to disclosure. In issuing this award, I am cognizant of its effect on the public fisc because agencies burdened with these fees are funded by tax dollars. Nonetheless, I also discern the importance of allowing recovery of attorney fees when parties engage in litigation that benefits the public by enforcing the statute. This public benefit is only achieved, however, when the party litigating the matter pursues avenues that yield favorable results.

### B. Findings & Fee Award

The following attorney fees are substantiated and recoverable as "reasonable attorney fees" under Section 1304(a) of the RTKL:

13

| Invoice | Litigation Stage/Activity | Amount Awarded |
|---|---|---|
| Jan. – July 2015 (Ex. A) | Pleadings (incl. Enforcement Pet. & Defending Prelim. Obj.) | $26,797.50 *full recovery* |
| Aug. – Nov. 2015 (Ex. A) & May – Dec. 2016 (Ex. B) | Dispositive Motions (Judgment on the Pleadings & Summ. Relief Petitions) | $0 (JOP); $11,803.33 (Summ. Relief) *partial recovery* |
| Dec. 2015 – May 2016 | Initial Discovery Phase | $8,180.33 *partial recovery* |
| Jan. – June 2017 (Ex. C) | Stipulation & Addit'l Discovery | $32,815.00 *full recovery* |
| July – Oct. 2017 (Ex. C) | Pre-Trial & Trial (Liability) | $36,462.21 *partial recovery* |
| March – June 2018 (Ex. D); *no invoice for July trial* | Pre-Trial & Trial (Damages) | $2,400.00 *partial recovery*; excl. publish motion & appeal |

Based on the evidence submitted, DOC's challenges, and in light of the complexity involved in the first-of-its-kind enforcement proceeding under the RTKL, I award Requester **$118,458.37** in attorney fees.

In deriving this award, I considered the factors discussed above, including the nature and complexity of this litigation, the parties' responsibilities in affecting its duration, the rates billed and the time expended. <u>Arches Condo. Ass'n</u>. In addition, I considered the purpose of the statutory scheme and the public policy ramifications of a fee award under Section 1304(a)(1) of the RTKL against an agency funded by the public. Accordingly, I apportion the fees claimed based on the results Requester achieved on the public's behalf.

14

Requester bore the burden of proof and persuasion as to reasonableness of the fees claimed. In support of its Fee Petition, Requester submitted Publisher's testimony, the Legal Invoices (in redacted and unredacted form), and Counsel Affidavits. I credit Publisher's testimony that the amount of fees and costs set forth in the Legal Invoices were incurred and paid. Counsel Affidavits also support the work performed and the amount of time spent and billed to Requester.

But the standard for recovery under Section 1304(a) of the RTKL is not all attorney fees and costs if incurred and paid; it is only "reasonable attorney fees." Other than the Counsel Affidavits, Requester submitted no evidence as to the reasonableness of the time spent or of counsel's hourly rates.[10] Nonetheless, unless there is insufficient evidence (i.e., amounts without explanation) to support the fees claimed, I only reduce the fees based on the challenges DOC raised.[11] Karoly.

---

[10] In a fee petition submitted pursuant to the RTKA, the media requester submitted evidence in the form of legal invoices as to the time expended and the hourly rates for the attorneys handling the litigation. See Parsons v. PHEAA (Pa. Cmwlth., No. 1239 C.D. 2006, filed February 8, 2008) (single j. op.) (approving fee award of $48,233.77; excluding fees related to Supreme Court appeal). In addition, it submitted an affidavit of independent counsel, (an executive of the Pennsylvania Newspapers Association), as to the reasonableness of the rates and the complexity of the litigation based on her experience in the relevant legal market. Based on that record, this Court found the discounted hourly rates of Craig Staudenmaier of $125 in 2006 and $140 thereafter, and that of his 8-year associate of $80 in 2006 and $115 thereafter, were reasonable. Id.

Requester did not submit equivalent evidence as to the reasonableness of its counsel's rates.

[11] The paucity of evidence warrants further mention. The only evidence to support the reasonableness of Attorney Joyce's hourly rates here is his statement in his affidavit that it is reasonable in his opinion based on his experience level. See Joyce Affidavit at ¶12. However, the Joyce Affidavit does not detail his experience level to enable this Court to assess his opinion. It states only that he was in practice at Saul Ewing for 5 years. That means when he worked on this case in 2015, he may have been a second-year associate billing at $295 per hour. Also, this was his first RTKL case.

However, DOC did not contest the reasonableness of the hourly rates in its post-trial brief, or with evidence like a market survey as to other Pittsburgh firms and their rates, or an affidavit of a third party practicing in the relevant market. Had DOC objected to the reasonableness of Attorney

Here, DOC challenged Requester's recovery of fees as to matters upon which Requester did not prevail. Because DOC did not otherwise object to the reasonableness of the fees claimed (e.g., as to time spent or hourly rates), DOC waived any challenge to the reasonableness of counsel's rates. Karoly.

Mindful of the effect on the public fisc and the quality of the evidence before me, I decline to award fees corresponding to matters where Requester did not prevail. Thus, I reduce and apportion the fees accordingly. I also exclude any fees and costs that are unsupported by the record or that relate to unnecessary filings.

## 1. Insufficient Evidence/Unsupported Fees

### (a) Costs

In its fee petition, Requester seeks costs related to the litigation. Although Requester bore the burden of proof, it submitted no evidence as to the reasonableness of the costs (almost $7,500, $3,000 of which related to travel) claimed. The Legal Invoices and Requester's witness establish only the amount of costs incurred and their payment. This is insufficient to permit their recovery under Section 1304(a) of the RTKL. Because there is no evidence as to the reasonableness of costs, Requester did not establish grounds for their recovery.

---

Joyce's hourly rate, or to the sufficiency of the evidence submitted in support of its reasonableness, further scrutiny would have been warranted.

The Legal Invoices reflect Attorney Joyce's work as follows: 61 hours in 2015 billed at $295/hour, which at partial recovery corresponds to $12,242.50 of the fee award; 141.9 hours in 2016 at $320/hour, which at partial recovery corresponds to $15,136.00 of the fee award; 161.7 hours in 2017 at $350/hour, which at partial recovery corresponds to $15,632.33 of the fee award; and 27.4 hours in 2018 at $375/hour, which, after excluding work on the motion to publish and premature appeal, corresponds to $1,087.50 of the fee award. Had the fee award been reduced by Attorney Joyce's billings based on the lack of evidence as to their reasonableness ($44,098.33), the total award would have been $74,360.04.

16

### (b) Timekeeper John A. Marty

Similarly, Requester did not submit any proof to support recovery of fees billed by timekeeper John A. Marty. The record is unclear whether he is an attorney, and his experience level is not described. Indeed, other than the Legal Invoices, there is no evidence supporting recovery of fees from *any* timekeepers other than Attorney Kelly and Attorney Joyce. Because the record is devoid of any evidence as to the reasonableness of timekeeper John A. Marty's fees, billed at $250 per hour, his fees are excluded from the fee award.

### 2. Unnecessary Filings

I also reduce attorney fees by time that was not relevant or reasonably expended in the scope of an enforcement action designed to access public records. Specifically, I exclude fees corresponding to preparation and filing of the motion to publish the Bad Faith Opinion. Filing the motion did not advance the litigation and was not necessary to effectuate this Court's opinion. Further, such a motion could have been filed by another, like the Office of Open Records (OOR). I deem the attorney fees corresponding to the motion to publish unreasonable. Because it is unclear how much time is attributable to the motion to publish as separate from other tasks described in the Legal Invoices, I exclude entries pertaining to the motion to publish reflected in the March and April 2018 invoices from my fee calculation and award.

In addition, attorney fees related to DOC's appeal of this Court's Bad Faith Opinion to our Supreme Court are likewise excluded. The necessity for a response before issuance of a final order by this Court, and when the Supreme Court

had not noted its jurisdiction or accepted the appeal, is unclear. Accordingly, attorney fees related to opposing DOC's appeal set forth in the April and May 2018 invoices are excluded.

### 3. Apportionment based on Level of Success

Section 1304(a)(1) of the RTKL explicitly authorizes apportionment of fees. DOC argued the award should exclude any amounts corresponding to matters on which Requester did not prevail. Based on my review of the Legal Invoices, and in particular, the work described therein, I apportion fees in accordance with the level of success Requester attained.

### a. Pleading Stage

The pleading stage corresponds to Requester's preparation of the Enforcement Petition and its defense against DOC's preliminary objections. Requester's Enforcement Petition was one of the first attempts to enforce a final determination issued by OOR in this Court. As such, it was a matter of first impression, involving a novel procedure and substantive matters of some complexity. Further, the Enforcement Petition withstood preliminary objections, and in that manner was successful as a pleading.

I find that all fees described in the Legal Invoices encompassing January 2015 through July 2015 relating to the preparation of the Enforcement Petition, and defense against DOC's preliminary objections are reasonable. Therefore, these fees totaling **$26,797.50** are fully recoverable under the RTKL.

18

## b. Dispositive Motions

### (i) Judgment on the Pleadings

In October 2015, Requester filed a motion for judgment on the pleadings on which it did not prevail. In so doing, Requester expended considerable time on matters that did not advance the ends it sought to attain. The utility of such a motion was questionable, as the parties disputed the construction of the Request and the records subject to disclosure remained undefined. As a consequence, judgment in its favor would have been incapable of enforcement. The Legal Invoices (Ex. A) reflect a total of 33.8 hours related to the judgment on the pleadings, corresponding to the following fees: $90.00 (8/15); $2,740.00 (9/15); $2,473.00 (10/15); $4,350.00 (11/15); and $2,844.50 (12/15). For the foregoing reasons, none of these fees related to the preparation of the motion for judgment on the pleadings are awarded.

### (ii) Summary Relief

Requester filed a summary relief petition. In response, DOC filed its own petition for summary relief. The parties briefed and argued the summary relief petitions, resulting in our Summary Relief Opinion.

Requester's summary relief petition was comprised of three primary arguments. This Court deemed unavailing its arguments that DOC was required to allow access to inmate medical files or create a record representing DOC medical staff's review of those records. Moreover, additional discovery was necessary to establish DOC's noncompliance, and we reserved judgment as to DOC's bad faith.

19

Ultimately, Requester did not prevail on its summary relief petition; additional facts were necessary to establish its claims, requiring additional discovery and associated fees. For this reason, I conclude it is not entitled to the $42,895.00 (May 2016 to December 2016) in claimed fees corresponding to its preparation of its summary relief petition and response to DOC. Because it did not prevail on its primary arguments, I award one third of the claimed fees as follows: $3,413.33 (5/16); $1,515.67 (6/16); $1,048.33 (7/16); $2,250.67 (8/16);[12] $1,451.33 (9/16); $53.33 (10/16); $1,964 (11/16); $106.67 (12/16). This portion totals **$11,803.33**.

### c. Discovery
### (i) Initial Discovery

From December 2015 through May 2016, Requester engaged in discovery following its unsuccessful motion for judgment on the pleadings. Discovery included two depositions and written discovery, including interrogatories and requests for production. The Legal Invoices in Exhibit B reflect 71.1 hours in attorney time corresponding to the following fees: $1,065.00 (12/15); $154.00 (1/16); $410.00 (2/16); $3,267 (3/16); $17,095 (4/16); $2,550.00 (5/16).[13]

This stage of discovery, prior to the summary relief phase, is deemed only partially successful based on the ends achieved. Accordingly, I apportion these

---

[12] I agree that fees attributable to an amendment to comply with court rules are not recoverable. DOC Post-trial Br. at 11 n.3. As a result, fees corresponding to Attorney Joyce's 2.6 hours at $320/hour over two days ($832.00) are excluded from the 8/16 bill before apportioning it.

[13] I already determined that $3,413.33 was recoverable from the May 2016 invoice as attributable to the summary relief petitions.

fees based on the level of success Requester attained in the summary relief phase. These apportioned fees total **$8,180.33**. See Tr. Ex. A (Dec. 2015), B.

### (ii) Post-Summary Relief Discovery & Stipulations

In January through June of 2017, Requester's counsel drafted stipulations and discovery and prepared for a status conference in response to this Court direction. Based on the Legal Invoices, and the submission, and the means of advancing the litigation, I find these fees are reasonable. Therefore, these fees totaling **$32,815.00** are awarded in full as follows: $7,270.00 (1/17); $105.00 (2/17); $8,065.00 (3/17); $630.00 (4/17); $3,730.00 (5/17); $13,015.00 (6/17).

### d. Pretrial, Trial and Post-trial (Liability Phase)

I deem the fees corresponding to pretrial preparation and additional discovery in the amount of $8,190.00 (7/17), reasonable and fully recoverable.

Although Requester largely prevailed in the liability phase of trial, I disagreed with one of its three main arguments that DOC committed bad faith in misconstruing the Request. Also, I was unpersuaded that DOC should have placed a litigation hold on the information contained in PTrax when it received the Request. DOC's failure to retain that information, while perhaps misguided, was not bad faith. As a result, I apportion the fees claimed by one third as to the Request argument, and by one ninth as to PTrax as follows: $21,458.33 (8/17); $194.44 (9/17); $6,619.44 (10/17). Thus, I award **$36,462.21** as to the liability phase.

21

### e. Pre-trial, Trial & Post-trial (Damages Phase)

In 2018, Requester did not incur attorney fees until March. The Legal Invoices (Exhibit D) reflect that most of the time expended from March through June 2018 pertained to the motion to publish and DOC's appeal of this Court's Bad Faith Opinion to the Supreme Court. After excluding time entries for those matters, I award fees in the amount of **$2,400.00** corresponding to the damages phase of trial.[14]

### III. Conclusion

For the foregoing reasons, I grant Requester's Fee Petition in part, and award attorney fees pursuant to Section 1304(a) of the RTKL, 65 P.S. §67.1304(a), in the apportioned amount of $118,458.37. DOC is directed to pay the fee award within 30 days.

ROBERT SIMPSON, Judge

---

[14] In its post-trial brief, Requester represents the total fees as of August 1, 2018 were $215,190.75. It is unclear whether this figure includes fees related to the damages trial on July 31, 2018. Also, after that date, counsel prepared post-hearing briefs and Counsel Affidavits supporting the fees claimed. Although Requester submitted the Counsel Affidavits in late August, it did not submit any invoices detailing the fees related to the damages phase of trial or post-trial briefing. Because there is no evidence as to fees in July or August 2018, those fees are not recoverable.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uniontown Newspapers, Inc., d/b/a :
The Herald Standard; and Christine :
Haines, :
                Petitioners : No. 66 M.D. 2015
                 :
         v. :
                 :
Pennsylvania Department of :
Corrections, :
             Respondent :

## DECISION

**AND NOW**, this 29th day of October, 2018, Petitioners' fee petition is **GRANTED** as to a portion of the fees claimed, and I hereby **AWARD $118,458.37** in fees pursuant to Section 1304(a)(1) of the Right-to-Know Law (RTKL).[15] Accordingly, the Pennsylvania Department of Corrections (DOC) is **ORDERED** to pay reasonable attorney fees as set forth in the accompanying opinion to Petitioners within 30 days. This fee award is in addition to the $1,500 civil penalty[16] imposed in this Court's decision in Uniontown Newspapers, Inc. v. Department of Corrections, 185 A.3d 1161 (Pa. Cmwlth. 2018) (single j. op.), pet. for allow. of appeal pending, (Pa., No. 561 MAL 2018, filed September 28, 2018).

As this **DECISION** is entered ancillary to a statutory appeal, it is intended to be a final order, and no post-trial practice is contemplated.

                                _____
                                ROBERT SIMPSON, Judge

---

[15] Act of February 14, 2008, P.L. 6, 65 P.S. §67.1304(a)(1).

[16] Section 1305(a) of the RTKL, 65 P.S. §67.1305(a).