IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janet and Scott Brunermer,         :
                Appellants         :
                                     :
            v.                   :
                                     :    No. 661 C.D. 2021
Apollo Borough                      :    Submitted: February 11, 2022


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: July 28, 2022


Janet and Scott Brunermer (Brunermers) appeal *pro se* from the May 12, 2021, order of the Court of Common Pleas of Armstrong County (trial court), which granted relief in the Brunermers' mandamus action arising from a request pursuant to Pennsylvania's "Right-to-Know" Law (RTKL)[1] but declined to assess attorneys' fees or civil penalties against Apollo Borough (Borough). Upon review, we affirm.


## I. Factual & Procedural Background

In February 2020, the Brunermers submitted a RTKL request to the Borough asking for "Borough-related e-mails to and from Brenda Troup [Troup], Zoning Officer, from personal and business e-mail accounts,

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

contact@thefishbowltoo.com [Fishbowl account] and rechhaben@gmail.com [Gmail account] from April 2017 – February 2020."[2] Office of Open Records (OOR) Final Determination, 6/5/20, at 1; Reproduced Record (R.R.) at 240a-47a. In March 2020, after taking a standard 30-day extension, the Borough produced documentation responsive to the Brunermers' request.[3] R.R. at 28a-33a. The Brunermers appealed to the OOR, which invited the parties to supplement the record and accepted additional submissions from both sides. *Id*. at 242a.

The OOR concluded in a June 2020 final determination that the Borough had not conducted a sufficient search for records when it received the Brunermers' initial request and since then had not shown that there were no further responsive records in its possession or the possession of any possible third parties. R.R. at 246a. The OOR ordered the Borough to search for and provide any additional records within 30 days. *Id*. In July 2020, the Brunermers filed a mandamus action in the trial court alleging that the Borough failed to conduct a good faith search for responsive documentation, which warranted imposition of attorneys' fees, costs, and civil penalties. *Id*. at 1a-15a.

Hearings were held in February and March 2021, during which counsel for the Borough acknowledged that some individuals were not asked to produce documents responsive to the February 2020 request until after the Brunermers filed their mandamus action in July 2020. R.R. at 710a. Scott Brunermer testified that in an unrelated mandamus action the Brunermers brought against the Borough, the

---

[2] The Brunermers also requested documentation from boroughmanager@yahoo.com, but ultimately withdrew their claims regarding that address based on the Borough's verification that the address was not associated with the Borough. Trial Ct. Rule 1925(a) Op. at 2 n.1; Reproduced Record (R.R.) at 872a.

[3] The subject matter pertains to a dispute between the Brunermers and the Borough as to permissible uses of a property owned by the Brunermers.

Brunermers received an email between Grant Kanish (Kanish), the Borough's building code official, and Troup at the Fishbowl account that was responsive to the Brunermers' RTKL request here but was not provided to the Brunermers as part of the Borough's RTKL response. R.R. at 674a. Kanish testified that Borough Solicitor Scott Andreassi (Andreassi) asked him for emails among himself, Troup, Andreassi, and other Borough personnel, but Kanish did not remember the date of the request. *Id*. at 683a-84a. Kanish recalled providing Andreassi with printouts of every email he could find after doing a search for the names of Troup, Andreassi, the Borough, and the Fishbowl and Gmail accounts, but did not remember when he did that. *Id*. at 684a-87a & 693a. After providing Andreassi with what he had, Kanish had no further involvement in this matter. *Id*. at 687a-89a. Kanish stated that the August 2020 affidavit he completed indicating he had no other responsive documents was true and accurate to the best of his knowledge when he signed it. *Id*. at 693a.

Richard Craft (Craft), the Borough's engineer, testified that Andreassi contacted him in August 2020, after the Brunermers filed their complaint, and asked him to gather any emails relevant to the Brunermers' initial RTKL request, which Craft stated he did by searching his project email folders and his inbox generally. R.R. at 697a & 701a. Craft was not asked to seek emails from other people at his engineering firm and he did not ask anyone else on his own. *Id*. at 698a-99a. He acknowledged that David Hill (Hill), an architect with his firm, was copied on many of the emails he produced, but Craft stated that he was the primary contact between his firm and the Borough and that Hill was not directly involved in any matters concerning property owned by the Brunermers. *Id*. at 700a & 702a-03a. Craft stated that the August 2020 affidavit he signed indicating he had no other responsive

3

documents was true and accurate to the best of his knowledge when he signed it. *Id.* at 703a.

Jamie Johnston (Johnston), an assistant secretary for the Borough, testified she was asked by Andreassi in June or July 2020 to look for emails between herself and Troup's Fishbowl and Gmail accounts. R.R. at 708a & 712a. She provided everything that came up when she searched her email account for those addresses. *Id.* at 712a-13a. She had no intent to withhold information or documents, and the August 2020 affidavit she signed indicating she had no other responsive documents was true and accurate to the best of her knowledge when she signed it. *Id.* at 714a-15a.

Deanna Shupe (Shupe), the Borough secretary and treasurer, stated that one of her duties is to handle RTKL requests and that she received the Brunermers' request in February 2020. R.R. at 717a. She searched her own emails for Troup's Fishbowl and Gmail addresses. *Id.* at 720a. She also asked Troup to search her emails and included Troup's responses with her own when she responded to the request in March 2020. *Id.* at 721a & 723a. She did not double-check with Troup about what Troup provided to her, and because she did not have access to Troup's email accounts, she was unable to review whether Troup's responses were complete. *Id.* at 744a-46a. She turned over everything she found and received from Troup and did her best to be thorough but acknowledged that additional emails were later found when she learned of other ways to search. *Id.* at 720a-31a, 744a & 750a. The affidavit she completed for the March 2020 response was accurate based on what she had done at that time. *Id.* at 722a. She could not recall whether she asked anyone else for information responsive to the Brunermers' request. *Id.* at 725a. She did not personally redact any information from the materials she provided. *Id.* at 739a-40a.

4

She did not know why some people were not asked for information until after the Brunermers filed their mandamus action in July 2020, but Andreassi told her that he would be asking some people, so she did not duplicate his efforts. *Id*. at 723a, 733a-34a & 748a. She did not intentionally withhold any documents or information. *Id*. at 749a.

Troup testified that she has been the Borough's appointed zoning officer on an independent contractor basis since 2012; she does not have a formal contract with the Borough. R.R. at 785a. Andreassi asked her to respond to the Brunermers' request when it was first received. *Id*. at 767a. She looked through her emails and found six or seven that she gave to Andreassi. *Id*. at 768a. She was later asked several times to check and make sure she had provided a complete response. *Id*. She did not recall Shupe asking her for the names of people she had emailed. *Id*. at 769a. She primarily used her Gmail account for Borough matters but acknowledged that some emails may have been through the Fishbowl account, which is for her personal business. *Id*. at 770a. She acknowledged deleting emails because she did not believe they needed to be kept and was not aware of a Borough policy on record retention. *Id*. at 773a-74a. She acknowledged several emails she either sent or received regarding the Brunermers' property. *Id*. at 779a-83a. She maintained that she provided everything she had and did not intentionally withhold any documents or information. *Id*. at 788a.

Andreassi, the Borough solicitor, testified that prior to the events at issue here, he began helping Shupe with RTKL requests. R.R. at 791a. Generally, when Shupe received a request, he would review it and advise her. *Id*. When she compiled a response, he would review it before it was sent to the requester. *Id*. at 791a-92a. He contacted many of the individuals in this matter, advised them to

5

produce any information they had, and produced it as it was provided to him. *Id*. at 797a-98a. He did not redact any information and did not withhold any attachments to responsive emails. *Id*. at 796a-97a. He acknowledged that after the Brunermers filed their complaint, he used the information in it to conduct another round of searches. *Id*. at 800a.

The trial court found the Borough had a duty to comply with the OOR's final determination and ordered the Borough to conduct a reasonable and good faith search for any additional records. Trial Ct. Adjudication & Order, 5/12/21; R.R. at 854a-57a. However, the trial court declined to find that the Borough had acted in bad faith. R.R. at 855a. The trial court noted that the Borough had not refused or failed to conduct a search for records, did not object or claim exemptions to the Brunermers' request, and had continued to search throughout the litigation in an effort to comply. *Id*. The trial court therefore denied the Brunermers' requests to assess attorneys' fees and civil penalties against the Borough. *Id*. at 857a.

The Brunermers filed a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) (Rule 1925 Statement) and the trial court issued an opinion pursuant to Rule 1925(a). *See* Pa.R.A.P. 1925(a) & (b); R.R. at 860a-64a & 871a-83a. The trial court concluded that the Brunermers' Rule 1925 Statement failed to raise "discrete allegations of error"; the only discernible assertion was that the trial court should have found that the Borough acted in bad faith and was subject to attorneys' fees and penalties. R.R. at 871a & 880a-83a. The matter is now before this Court.[4]

---

[4] Under the RTKL, when the request for records is directed to a local agency, the trial court reviews the OOR's determination with a *de novo* standard and a plenary scope; in this context, our appellate review is limited to determining whether the trial court has committed an error of law and whether the findings of fact are supported by substantial evidence. *Off. of Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1123 n.3 (Pa. Cmwlth. 2017) (*Bagwell*).

6

## II. Discussion

Agencies have a mandatory duty to conduct a good faith search for records sought pursuant to a RTKL request. Section 901 of the RTKL states:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request.

65 P.S. § 67.901. In the RTKL context, bad faith does not require a showing of fraud or corruption by the agency; a lack of good faith compliance and failure to meet the mandatory duty of disclosure may rise to the level of bad faith without a showing of intent to withhold information. *Uniontown Newspapers, Inc. v. Dep't of Corr.*, 185 A.3d 1161, 1170 (Pa. Cmwlth. 2018) (*Uniontown Newspapers II*) (Simpson, J., single judge op.).[5] Failing to perform a search until a matter is in litigation, which may be shown by the existence of responsive records that later come to light, may also constitute bad faith. *Id.*

### A. Attorneys' Fees

The purpose of attorneys' fees under the RTKL is to "remedy the damage to the requester where an agency has denied access to records in bad faith and to the agency where a requester has launched a frivolous challenge to a denial of access by restoring the requester or the agency to the place where each would have been prior to petitioning the court for review." *Off. of the Dist. Att'y of Phila.*

---

[5] Pursuant to Section 414(b) of this Court's Internal Operating Procedures, single-judge opinions, even if reported, may be cited only for their persuasive value and are not binding precedent. 210 Pa. Code. § 69.414(b).

*v. Bagwell*, 155 A.3d 1119, 1140 (Pa. Cmwlth. 2017) (*Bagwell*). A trial court may order payment of attorneys' fees to a requester pursuant to Section 1304(a) of the RTKL, which provides:

> (a) Reversal of agency determination.—If a court reverses the final determination of the appeals officer[6] or grants access to a record after a request for access was deemed denied,[7] the court may award reasonable attorney[s'] fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:
>
> (1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or
>
> (2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

65 P.S. § 67.1304(a).

The leading cases on bad faith attorneys' fees in RTKL matters arise out of recent litigation between Uniontown Newspapers, Inc., and the Department of Corrections (DOC). The dispute arose in 2014 when a reporter requested information from the DOC concerning potential exposure of inmates to toxic coal waste at the State Correctional Institution-Fayette. *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 151 A.3d 1196, 1200 (Pa. Cmwlth. 2016) (*Uniontown Newspapers I*). The DOC denied the request in its entirety, asserting the records

---

[6] In *Uniontown Newspapers, Inc. v. Department of Corrections*, 243 A.3d 19, 33-34 (Pa. 2020) (*Uniontown Newspapers IV*), our Supreme Court held that the "appeals officer" in this section is the records officer of the agency subject to the RTKL request.

[7] Attorneys' fees are recoverable when an access request is deemed denied. Under the RTKL, a request is "deemed denied" where there is a failure to respond to the request within a statutory deadline. *Uniontown Newspapers v. Dep't of Corr.*, 197 A.3d 825, 832 n.4 (Pa. Cmwlth. 2018) (*Uniontown Newspapers III*) (Simpson, J., single judge op.) (citing *McClintock v. Coatesville Area Sch. Dist.*, 74 A.3d 378 (Pa. Cmwlth. 2013)).

8

were part of an internal investigation and therefore not subject to disclosure. *Id*. The OOR disagreed and ordered disclosure, after which the DOC released some documentation, but the requester filed a petition for review asking this Court to enforce the OOR's order and compel further disclosure. *Id.* at 1201. This Court largely denied the parties' cross-motions for summary relief and ordered further fact-finding as to the extent of the DOC's noncompliance and whether the DOC acted in bad faith.[8] *Id*. at 1209.

Subsequently, this Court found that the DOC's records custodian had not independently addressed the request, but had forwarded it to the DOC's health bureau and then relied on the health bureau's position that all requested records were exempt from disclosure. *Uniontown Newspapers II*, 185 A.3d at 1168. This Court found bad faith based on the DOC's denial of the request without having conducted a good faith search, its decision to contest the requester's appeal to the OOR while still failing to obtain and assess all potentially responsive records, and its failure to comply with the OOR's disclosure order. *Id*. at 1172-73. This Court also found that the DOC acted in bad faith when it failed to locate and disclose responsive records after the order and instructions set forth in *Uniontown Newspapers I*. *Id*. at 1173-74. We noted: "Critically, [DOC] did not perform any search for records in response to the Request. . . . Without obtaining or reviewing any records, DOC denied access to responsive public records. DOC's failure to [conduct a good faith search] prior to issuing its 'denial' . . . constitute[d] bad faith." *Id.* at 1172. We also explained that

---

[8] When a state agency is the subject of a RTKL enforcement action, a single judge of the Commonwealth Court serves as the arbiter of disputes over attorneys' fees and civil penalties. When, as in this case, a local agency is the subject, the common pleas court serves that role. *See Uniontown Newspapers III*, 197 A.3d at 835 n.8.

9

DOC's delay in complying with the Disclosure Order was unreasonable. Once this Court issued the Summary Relief Opinion, there was no excuse for further delay. Yet, DOC forced Requester to expend time and resources to discern what responsive records remained undisclosed. Under these circumstances, DOC's persistent denial of access constitute[d] bad faith.

*Id.* at 1174.

After a hearing, this Court awarded the requester attorneys' fees because the DOC had acted in bad faith and denied disclosure willfully and with knowing disregard of the requester's rights to access. *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 197 A.3d 825, 834-35 (Pa. Cmwlth. 2018) (*Uniontown Newspapers III*) (Simpson, J., single judge op.). Our Supreme Court affirmed. *Uniontown Newspapers, Inc. v. Dep't of Corr.*, 243 A.3d 19, 24, 34 (Pa. 2020) (*Uniontown Newspapers IV*).

Here, the Brunermers argue that the Borough's initial search and response was insufficient and that the Borough failed to comply with its statutory duties under the RTKL, including its production of additional records after the Brunermers began litigation; the Brunermers claim this amounted to bad faith sufficient to warrant an award of attorneys' fees. Brunermers' Br. at 20-32; Brunermers' Reply Br. at 3-6. The Borough responds that its actions did not constitute a bad faith denial or refusal to search for records. Borough's Br. at 7. Rather, the Borough asserts that it made good faith efforts to respond to the Brunermers' multiple RTKL requests (other legal actions between these parties are pending). *Id*. at 7-10.

The trial court found that the Borough had not denied the Brunermers' request or claimed exemptions from disclosure and had engaged in a valid search for responsive documentation. Trial Ct. Rule 1925(a) Op. at 11; R.R. at 881a. The trial

court added that although the Borough had not provided a complete response to the Brunermers' request, the evidence and circumstances, including the Brunermers having filed several lawsuits and dozens of requests within the preceding calendar year, indicated that the Borough had not acted in bad faith. *Id.* at 11-12; R.R. at 881a-82a ("[T]he Borough acted slowly and without adequate staff or open records training, but not in bad faith.").

We note that Section 1304(a) applies where a reviewing court reverses the agency's denial of disclosure or grants access after a deemed denial, which occurs when an agency fails to timely respond to a request. 65 P.S. § 67.1304(a). Assuming, without deciding, that the initial requirement for applicability of Section 1304(a) was met, the trial court's finding that the Borough did not act in bad faith is supported by substantial evidence of record. It is true that in the context of the RTKL, intent to wrongfully withhold disclosure is not required for a finding of bad faith and that an agency's failure to provide an adequate response to a request *may* be the basis for such a finding. *Uniontown Newspapers II*, 185 A.3d at 1170. However, a trial court, as the reviewing court, is the finder of fact, and its conclusion regarding a party's bad faith will be upheld unless the opponent establishes that it is legally erroneous or unsupported by substantial evidence of record. *Bagwell*, 155 A.3d at 1123 n.3.

The Borough's witnesses testified that when they learned of the Brunermers' request, they searched their emails and provided what they found. R.R. at 684a-87a, 697a, 701a, 712a-13a, 720a-31a & 768a. The witnesses also confirmed that their affidavits accompanying their submissions were true and accurate to the best of their knowledge when they completed them. *Id.* at 693a, 703a, 714a-15a & 722a. Shupe, the Borough's *de facto* RTKL officer, candidly acknowledged that

11

after she sent her first submission, she found other documents when she learned different ways to search her email accounts, but that she did her best to be thorough. *Id*. at 720a-31a, 744a & 750a. She asked Troup, the Borough's appointed zoning officer, for documentation and passed along what she received from Troup, but had no way to confirm whether Troup's submission was complete because she did not have access to Troup's accounts. *Id*. at 744a-746a.

Troup also candidly acknowledged that she had deleted Borough-related emails in the past because she did not believe they needed to be kept and that she was not aware of a Borough policy on record retention. R.R. at 773a-74a. She nevertheless averred that she had turned over everything she found. *Id*. at 788a. Andreassi, the Borough solicitor, acknowledged that after the Borough's initial response in March 2020, when he read the Brunermers' complaint commencing their action, he made further inquiries based on the information in that filing that apparently had not been known to him beforehand. *Id*. at 800a.

Here, the trial court did not expressly credit the Borough's witnesses, but it did so by necessary implication in concluding the Borough's actions did not amount to bad faith so as to warrant attorneys' fees. The trial court particularly noted that while the Borough's failure to initially provide all responsive information *could* result in a finding of bad faith, the totality of circumstances and evidence here did not warrant such a finding. Trial Ct. Rule 1925(a) Op. at 11-12; R.R. at 881a-82a. Although the Brunermers attempted to portray the Borough's conduct as obstructive, the trial court found no support in the record for that characterization. *Id*. at 11; R.R. at 881a.

We agree. The circumstances here are distinguishable from the facts in the *Uniontown Newspapers* cases, where the DOC denied the initial request without

12

conducting a search, then repeatedly failed to locate and disclose documents after orders by both the OOR and this Court to do so. Here, the Borough did not deny the Brunermers' request or claim exemptions to disclosure. The Borough witnesses testified that they did their best to comply with the initial request, then voluntarily and independently searched for more records when they learned better methods to do so or, in the instance of Andreassi, when he learned from the Brunermers' complaint of additional potential information subject to disclosure. Although a lack of resources does not justify nondisclosure, the Borough did not assert its lack of resources as an excuse, and the trial court found as fact that in the context of the Brunermers' multiple requests and lawsuits, the Borough had essentially done its best. *But see Pa. State Sys. of Higher Educ. v. Ass'n of State Coll. & Univ. Faculties*, 142 A.3d 1023, 1032 (Pa. Cmwlth. 2016) (stating that "just because an agency claims it neither has the time nor resources to conduct a document-by-document review within the time-period required by the RTKL does not make it so"). Unlike in the *Uniontown Newspapers* cases, the record here does not indicate the Borough acted willfully, with wanton disregard of its responsibilities, or otherwise in bad faith.[9] As the record supports the trial court's conclusion, the court did not err in declining to impose attorneys' fees on the Borough.

---

[9] In a March 18, 2022, post-submission filing, the Brunermers asked this Court to consider *California University of Pennsylvania v. Bradshaw* (Pa. Cmwlth., No. 1491 C.D. 2018, filed Oct. 13, 2021) (Brobson, P.J., single judge op.) (unreported), where a single judge of this Court, acting as the reviewing court, imposed attorneys' fees and civil penalties on the university after finding that it acted in bad faith when it denied a RTKL request based on a clearly unreasonable interpretation of the law and admittedly failed to conduct any search before issuing the denial. *Id.*, slip op. at 13-16. The university had pursued its legally insufficient denial as far as our Supreme Court, which denied allocatur, before conducting a search and determining that no responsive records existed. *Id.*, slip op. at 14-15. Had the university conducted a search prior to denying and litigating the request, several years of litigation could have been "short-circuited." *Id.* This case is distinguishable from *Bradshaw* because the Borough did not deny, claim exemptions to, or litigate the Brunermers' request, and the record here contains no indication of bad faith conduct on the part of the Borough.

## B. Civil Penalties

A trial court may impose civil penalties against an agency pursuant to Section 1305 of the RTKL, which states:

> (a) Denial of access.--A court may impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith.
>
> (b) Failure to comply with court order.--An agency or public official who does not promptly comply with a court order under this act is subject to a civil penalty of not more than $500 per day until the public records are provided.

65 P.S. § 67.1305.

Whereas attorneys' fees pursuant to Section 1304(a) seek to remedy damage to a requester when an agency denies disclosure in bad faith, civil penalties under Section 1305 "penalize conduct of a local agency and . . . provide a deterrent in the form of a monetary penalty in order to prevent acts taken in bad faith in the future." *Bagwell*, 155 A.3d at 1141. "[B]ad faith is a matter of degree, implicating the extent of noncompliance," and the reviewing court (either the trial court or this Court) has the exclusive authority to find facts and impose sanctions in this regard. *Uniontown Newspapers I*, 151 A.3d at 1203, 1208.

In *Bagwell*, the Philadelphia District Attorney's office initially denied the RTKL request as a whole, claiming numerous exemptions. 155 A.3d at 1123. The OOR ordered disclosure and the trial court agreed, ultimately imposing a Section 1305 civil penalty of $500. *Id*. at 1124. We affirmed upon concluding that the record was "replete with evidence" that the District Attorney's office wrongly denied access based on the identity of the requester and the presumed intended use of the records, failed to cite sufficient legal authority in support of its reasons for

14

denial, and did not make a good faith search for the requested records. *Id*. at 1141-42. In the *Uniontown Newspapers* cases, this Court found that the DOC's referral of the matter to its health bureau and reliance on the bureau's reasons for denying disclosure did not constitute a good faith search. *Uniontown Newspapers II*, 185 A.3d at 1172, 1174. In imposing Section 1305 penalties on the DOC, we emphasized the agency's "noncompliance throughout the RTKL process" for more than three years. *Id*. at 1175-76.

Where this Court has awarded or upheld penalties under Section 1305(a), there generally has been an initial denial by the agency (as required by the provision) followed by ongoing nondisclosure or explanations not credited by the reviewing court. *See, e.g.*, *Uniontown Newspapers II*, 185 A.3d at 1175-76; *Bagwell*, 155 A.3d at 1141-42. By contrast, when an agency has shown some diligence to respond to a request and nondisclosure is due to a genuine and nonfrivolous belief that documents have been provided, are unavailable, or are not subject to disclosure, we have declined to impose or uphold penalties. *See, e.g.*, *Campbell v. Pa. Interscholastic Athletic Ass'n (Off. of Open Recs.)*, 268 A.3d 502, 519 (Pa. Cmwlth. 2021); *Capinski v. Upper Pottsgrove Twp.*, 164 A.3d 601, 610 n.14 (Pa. Cmwlth. 2017); *Drack v. Ms. Stacy Hamilton Open Recs. Officer Borough of Carlisle* (Pa. Cmwlth., No. 2128 C.D. 2014, filed Jan. 13, 2016), slip op. at 8, 2016 WL 182499, at *3 (unreported).[10]

As discussed above, in the context of the RTKL, intent to wrongfully withhold disclosure is not required to sustain a finding of bad faith, while an agency's failure to provide an adequate response to a request may, but need not, be

---

[10] Section 414(a) of this Court's Internal Operating Procedures provides that an unreported panel decision issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent. 210 Pa. Code § 69.414(a).

the basis for such a finding. *Uniontown Newspapers II*, 185 A.3d at 1170. However, the reviewing court (in this case the trial court) is the finder of fact, and its conclusion regarding a party's bad faith will be upheld unless the opponent establishes that it is legally erroneous or unsupported by substantial evidence of record. *Bagwell*, 155 A.3d at 1123 n.3.

Here, the Brunermers sought a $1,500 civil penalty against the Borough under Section 1305(a) of the RTKL and asked the trial court to impose penalties upon the Borough of $500 per day under Section 1305(b) if the court ordered further disclosure and the Borough did not comply. Brunermers' Complaint ¶¶ 81-82; R.R. at 13a-14a. The trial court did not address subsections (a) and (b) distinctly, but generally concluded that under the circumstances, including the Brunermers' dozens of RTKL requests and multiple lawsuits against the Borough within the past year, the Borough had not acted in bad faith so as to warrant penalties, even though its response in this matter was incomplete and it should have conducted a more thorough search at the outset. Trial Ct. Rule 1925(a) Op. at 11-12; R.R. at 881a-82a. Before this Court, the Brunermers reiterate their arguments that the Borough's incomplete response amounted to bad faith such that penalties are warranted. Brunermers' Br. at 19-36. The Borough responds that the trial court correctly concluded that no bad faith had occurred. Borough's Br. at 4-12.

As detailed above, the Borough's witnesses testified that when they learned of the Brunermers' request, they searched their emails and provided what they found. R.R. at 684a-87a, 697a, 701a, 712a-13a, 720a-31a & 768a. The witnesses also confirmed that their affidavits accompanying their submissions were true and accurate to the best of their knowledge when they completed them. *Id*. at 693a, 703a, 714a-15a & 722a. The Borough's witnesses did not deny or challenge

16

the request, candidly acknowledged when their efforts had fallen short, and explained their efforts to remediate the issue. R.R. at 773a-74a & 800a.

The trial court did not expressly credit the Borough's witnesses, but it did so by necessary implication in concluding the Borough's actions did not amount to bad faith so as to warrant penalties. The court particularly noted that while the Borough's failure to initially provide all responsive information *could* result in a finding of bad faith, the totality of circumstances and evidence here did not warrant doing so. Trial Ct. Rule 1925(a) Op. at 11-12; R.R. at 881a-82a. Although the Brunermers attempted to portray the Borough as obstructive, the trial court found no support in the record for that characterization. R.R. at 881a. We agree. As the record supports the trial court's conclusion, the court did not err in declining to impose a Section 1305(a) penalty on the Borough. Because this matter was appealed by the Brunermers upon the trial court's May 12, 2021, order that the Borough obtain and provide all previously undisclosed documentation, there is no evidence that the Borough failed to promptly comply with that order. Therefore, we likewise discern no error in the trial court's refusal to impose a penalty under Section 1305(b).[11]

---

[11] The Brunermers also argue that they should not have had to issue a subpoena to Troup for her attendance at the first hearing before the trial court in February 2021. Brunermers' Br. at 33-34. The Brunermers assert that they issued Troup a notice to attend the hearing, which should have been sufficient pursuant to Pennsylvania Rule of Civil Procedure 234.3, Pa.R.Civ.P. 234.3, and that they were wrongfully subjected to additional counsel costs associated with an additional hearing. The trial court did not independently rule upon this issue upon finding that all points raised in the Brunermers' Rule 1925(b) Statement were related to their position that the Borough acted in bad faith, which the court ultimately found meritless. Trial Ct. Rule 1925(a) Op. at 1; R.R. at 871a. We agree. In their Statement, the Brunermers raised the issue of Troup's non-appearance at the first hearing, but characterized it as additional evidence of the Borough's bad faith and not as a discrete instance of trial court error. R.R. at 863a.

We also note that at the hearing, Borough Solicitor Andreassi argued that although Troup was the Borough's zoning officer, she held the position in an independent contractor capacity and was therefore only subject to compelled attendance and testimony via subpoena. R.R. at 754a-

### III. Conclusion

The trial court did not err in declining to impose attorneys' fees and penalties on the Borough pursuant to Sections 1304 and 1305 of the RTKL. We therefore affirm the trial court's order.

_____
CHRISTINE FIZZANO CANNON, Judge

---

57a. The trial court agreed over Brunermers' counsel's assertion that Troup had appeared for depositions in previous proceedings without requiring a subpoena; therefore, requiring her to be subpoenaed for the hearing was disingenuous. *Id.* Ultimately, Troup did appear and testify at the March 2021 hearing after the Brunermers issued a subpoena for her to do so. R.R. at 770a-91a. Thus, any error on the part of the trial court was harmless and to the extent the Brunermers seek attorneys' fees for the March 2021 hearing, that claim is meritless in light of the Brunermers' failure to establish entitlement to attorneys' fees pursuant to Section 1304(a) of the RTKL, as discussed in Section "A" above.

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janet and Scott Brunermer,                    :
                          Appellants          :
                                              :
            v.                                :
                                              :   No. 661 C.D. 2021
Apollo Borough                                :

# O R D E R

AND NOW, this 28th day of July, 2022, the May 12, 2021, order of the Armstrong County Court of Common Pleas is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge