Carrie Hahn,
    Appellant

    v.

Lawrence County

    :
    :
    :
    :
    :
    : No. 679 C.D. 2021
    : Submitted: March 4, 2022


BEFORE: HONORABLE ANNE E. COVEY, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY            FILED: August 8, 2022

    Carrie Hahn (Requester) appeals, *pro se*, from the Lawrence County (County) Common Pleas Court's (trial court) May 13, 2021 order affirming the Office of Open Records' (OOR) Final Determination that granted in part, denied in part, and dismissed as moot in part, Requester's appeals from the County's denial of her Right-to-Know Law (RTKL)[1] request for the County Board of Elections (Election Board) meeting minutes (First Request) and the Wilmington Township (Township) 2017 tax duplicate (Second Request) (collectively, Requests), and directed the County to provide all additional responsive records to Requester within 30 days. Requester presents five issues for this Court's review: (1) whether the trial court erred and abused its discretion by ruling that the County substantially complied with the First Request, when the Election Board meeting minutes were not provided in the requested format and the County failed to timely release the records as the OOR's Final Determination directed; (2) whether the trial court erred and abused its

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

discretion by denying Requester the complete 2017 Township tax duplicate; (3) whether the trial court erred and abused its discretion by denying Requester's request to submit a brief as provided by County Local Rule L300 (relating to statutory appeals); (4) whether the trial court erred and abused its discretion by denying Requester's request to call the Agency Open Records Officer, County Assistant Solicitor Carolyn J. Flannery-Lang, Esquire (AORO), to testify as a witness during the evidentiary hearing; and (5) whether the trial court erred and abused its discretion by holding that neither the County nor the OOR acted in bad faith, and the OOR had not violated Requester's due process rights.

On June 2, 2020, Requester filed the Requests seeking:

[1.] [] County [Election Board] [m]eeting [m]inutes, in their original electronic Word file format, for all [Election B]oard meetings in 2017, 2018, 2019, and 2020. ****[ portable document format (]PDF[)] >File> Properties, for [Election Board] [m]eeting [m]inutes received per my December 31, 2019 RTK[L request], indicate that the PDF[ documents] were created from Word (a popular word-processing program)[; and]

[2.] Electronic, PDF copy of the 2017 "tax duplicate" as identified in [the County's Chief] Assessor [Charles] Hardester's March 4, 2020 affidavit submitted to the [OOR] in AP Dkt. No. 2020-0370 . . . .

Original Record at 9, 33.[2] On June 9, 2020, the Requests were deemed denied because the County did not timely respond thereto.[3] On June 18, 2020, Requester appealed from both denials to the OOR, stating grounds for disclosure. The OOR

---

[2] The Requests were filed separately on the same date. Requester had filed previous requests seeking the same items, but later withdrew them, albeit not until after the OOR ruled thereon, to make the requests more specific because Requester was dissatisfied with the records she received.

[3] Section 901 of the RTKL provides, in relevant part: "If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied." 65 P.S. § 67.901.

consolidated the appeals, invited both parties to supplement the record, and directed the County to notify any third parties of their right to participate in the appeal.

On August 7, 2020, the County submitted a copy of a letter it had sent to Requester, indicating that it was transmitting the Election Board meeting minutes responsive to Item 1. Also on August 7, 2020, Requester submitted copies of the Election Board meeting minutes the County provided. Requester noted her objection to the County's provision of the records in PDF format because she had requested them in their original Word format. On August 14, 2020, in its Final Determination, the OOR granted the Second Request for copies of the 2017 tax duplicate that the County acknowledged existed, and directed the County to provide all additional responsive records to Requester within 30 days; the OOR denied the First Request seeking the Election Board meeting minutes in Word format; and the OOR ruled that, insofar as Requester received the requested Election Board meeting minutes, that portion of her appeal was moot. Requester appealed to the trial court.

On April 29, 2021, the trial court held a hearing. On May 13, 2021, the trial court affirmed the OOR's Final Determination. On June 11, 2021, Requester appealed to this Court.[4] On June 16, 2021, the trial court ordered Requester to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania

---

[4] This Court's "review of a trial court's order in a[n] RTKL dispute is 'limited to determining whether findings of fact are supported by [substantial] evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision.'" *Butler Area Sch. Dist. v. Pennsylvanians for Union Reform*, 172 A.3d 1173, 1178 n.7 (Pa. Cmwlth. 2017) (quoting *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011)). "The scope of review for a question of law under the [RTKL] is plenary." *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672, 674 n.2 (Pa. Cmwlth. 2010) (quoting *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n.4 (Pa. Cmwlth. 2010), *aff'd*, . . . 45 A.3d 1029 ([Pa.] 2012)).

*Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.8 (Pa. Cmwlth. 2019).

Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On July 2, 2021, Requester filed her Rule 1925(b) Statement. On August 19, 2021, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).

Requester first argues that the trial court erred and abused its discretion by ruling that the County substantially complied with the First Request, when the Election Board meeting minutes were not provided in the requested Word format and the County failed to timely release the records as the OOR directed in its Final Determination. Specifically, Requester contends that the PDF files are not substantially the same as the requested Word documents. Requester claims that metadata found in the PDF meeting minutes the County previously produced reflect that the PDF was created from Word, thus, Requester specifically sought the Election Board meeting minutes in the original Word file in which the record was compiled, maintained, and formatted.

The County rejoins that much of Requester's argument concerns the metadata *supposedly* existing in the original electronic word processing file of the Election Board meeting minutes. *See* County Br. at 4. The County asserts that there are two key factors to consider with this issue. The first is that digital audio recordings of the actual meetings are made.[5] Second, government agency meeting minutes must be voted on to be accepted as actual minutes; otherwise, no minutes actually exist. *See id*. The County declares that Requester did not request drafts of proposed meeting minutes; rather, she requested the actual minutes. The County insists that there is no metadata or physical document that comes into existence via government action.

---

[5] Requester was provided with MP3 audio recordings of the Election Board meeting minutes in response to her previous request.

4

Initially,

> [p]ursuant to the RTKL, a public record must be accessible for inspection and duplication. Section 701(a) of the RTKL, 65 P.S. § 67.701(a). A record in the possession of an agency . . . is presumed to be a public record, unless the record is exempt under Section 708 of the RTKL, 65 P.S. § 67.708, protected by a privilege, or exempt from disclosure under other law or court order. *See* Section 305(a) of the RTKL, 65 P.S. § 67.305(a). The agency bears the burden to prove that a record is exempt from public access. *See* Section 708(a)(1) of the RTKL. Section 705 of the RTKL, 65 P.S. § 67.705, provides: "When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record."

*Sturgis v. Dep't of Corr.*, 96 A.3d 445, 446 (Pa. Cmwlth. 2014). Section 701(a) of the RTKL further declares, in pertinent part: "A record being provided to a requester shall be provided in the medium requested if **it exists in that medium**; otherwise, it shall be provided in the medium in which it exists." 65 P.S. § 67.701(a) (emphasis added). In addition, Section 701(b) of the RTKL specifies: "Nothing in this act shall be construed to require access to any computer either of an agency or individual employee of an agency." 65 P.S. § 67.701(b).

Here, the County submitted the AORO's Affidavit (Affidavit), which provided, in relevant part: "While meeting minutes of the [Election] Board . . . may be typed/created via a computer program, such as [] Word, the minutes proposed for approval to the [Election] Board is a printed, hard-copy, paper format, and until the [Election] Board votes to approve minutes, there are no official minutes."[6] Reproduced Record (R.R.) at 53a; Affidavit ¶ 23.

---

[6] The Affidavit was submitted in response to Requester's previous request, but the Affidavit is included in Requester's Reproduced Record.

5

The OOR determined:

> Pertinent to the instant matter, the OOR has recently held that the County's production of [PDF] files in response to the Requester's request for Word files did not violate the RTKL, opining that the County was not required to produce Word files because the requested records had been produced in the medium requested, i.e.[,] electronically. *See Hahn v. Lawrence* [*Cnty.*], OOR Dkt. AP 2020-0181, 2020 PA O.O.R.D. LEXIS 495. Accordingly, the County need not produce records in Word format.

R.R. at 34a; OOR Final Determination at 5. It is undisputed that the County provided 5 Election Board meeting minutes for year 2017, 1 meeting minute for 2018, 10 meeting minutes for 2019, and 4 meeting minutes for 2020, albeit in PDF format. *See* R.R. at 25a. At the trial court hearing, Requester presented a trial aid that identified the dates of the Election Board meeting minutes which were not produced, i.e., May 14, May 29, and November 5, 2018.[7] Upon the production of the trial aid, the County provided paper copies of the missing Election Board meeting minutes, and handed them to Requester in the courtroom.

On appeal, the trial court ruled: "In that the County had previously substantially complied with the directives of the [OOR], and at the hearing[] supplemented the prior submission of records to the [R]equester by producing the three missing [Election Board] [m]eeting [m]inutes, [Requester's] first appeal is dismissed as moot." Trial Ct. May 13, 2021 Op. at 7.

The County provided all but three Election Board meeting minutes before the OOR ruled on the appeals, and provided the remaining three Election Board meeting minutes during the trial court hearing. Because the County provided the records in the electronic format that they currently exist, i.e., PDF format, this

---

[7] The trial court misidentifies the November 5, 2018 Election Board meeting minutes in its Rule 1925(a) Opinion as June 3, 2018.

Court discerns no error in the trial court's ruling that the County substantially complied with the OOR's Final Determination.[8] *See* 65 P.S. § 67.701(a). However, given that Requester had requested the Election Board meeting minutes in an electronic format, which medium existed, and the County provided paper copies of the three missing Election Board meeting minutes, Section 701(a) of the RTKL requires this Court to reverse the trial court's ruling that the appeal concerning the First Request is moot. Accordingly, this Court remands to the trial court to direct the County to provide Requester with the three missing Election Board meeting minutes in electronic PDF format.

Requester next argues that the trial court erred and abused its discretion by denying Requester the complete 2017 Township tax duplicate. However, the trial court did not deny the Second Request. The trial court expressly determined:

> As to [Requester's S]econd [R]equest, namely for the 2017 tax duplicate of [the] Township, the evidence produced at the April 29, 2021 hearing was also abundantly clear that the County had offered to provide that information to the [R]equester upon payment of the duplication fees of $.09 per page. While [] [R]equester had requested that the [2017] tax duplicate be presented in the 2012 format of 50 parcels per page, Section 705 of the [RTKL] . . . does not require the County to do that, as long as it presents the record in the format in which it currently exists, which is 5 parcels per page, with each parcel being appropriately identified as to owner, owner's mailing address, parcel identification number, approximate acreage, tax assessment value, and taxes at their discount, face and penalty amounts.
>
> The [trial c]ourt is satisfied that the County has made an appropriate response and made the records available to []

___

[8] Requester claims she wants the metadata to make sure the Election Board meeting minutes are accurate. However, Requester has the original MP3 meeting recordings from which she can compare the PDF files.

[R]equester upon payment of the appropriate duplication
fee of $.09 per page.

Trial Ct. May 13, 2021 Op. at 7. This Court discerns no error in the trial court's determination.[9]

Requester next asserts that the trial court erred and abused its discretion by denying Requester's request to submit a brief as provided by County Local Rule L300.

County Local Rule L300 provides, in relevant part:

**(b) Evidentiary Hearing**

. . . .

(3) In cases in which evidence is received by the [trial] court pursuant to subsection (a)(2)(i) of this [County Local] Rule, after the close of the evidentiary proceedings, all parties shall submit proposed findings of fact to the [trial] court along with their respective briefs on the merits of the appeal **in accordance with a schedule fixed by the [trial] court**.

L.Cnty.R.Civ.P. L300 (emphasis added).

Courts of common pleas have authority to make rules for the operation of their own court system as long as the rules are not contrary to those promulgated by the Pennsylvania Supreme Court. *Murphy v. Armstrong*, . . . 622 A.2d 992 ([Pa. Super.] 1993).

---

[9] According to Requester: "In response to the [prior] Final Determination, the AORO sent an e-mail to [Requester] with three (3) [PDF] files titled as 2017 [t]ax [d]uplicate." *See* Requester Br. at 29 (internal record citation omitted); *see also* Supplemental Record at 10 (September 1, 2020 e-mail). Because the pages are not numbered in the Supplemental Record, the page number referenced in this Opinion reflects electronic pagination. Further, at the trial court hearing, Requester admitted that the OOR determined in its prior Final Determination that the OOR was permitted to charge a fee for the 2017 tax duplicate, which at that time was $.10 a page. *See* Notes of Testimony, April 29, 2021 at 75-76.

Moreover, as the trial court observed: "[T]his tax information is readily available online through the [] County Tax Assessment Office as to individual parcels of land in [the] Township, containing all of the respective tax information relative to that parcel." Rule 1925(a) Opinion at 5-6.

8

> The application, construction, and interpretation of local rules of court are matters primarily to be determined by the trial court promulgating the rule, and **this Court will only interfere where the trial court commits an abuse of discretion**. *Weinhold v. Brecknock Twp. Zoning Hearing Bd.*, . . . 635 A.2d 244 ([Pa. Cmwlth.] 1993).

*Reaves v. Knauer*, 979 A.2d 404, 414 (Pa. Cmwlth. 2009) (emphasis added).

> The Pennsylvania Supreme Court has explained:

> "Regarding the 'abuse of discretion' standard of review, this Court has explained that the term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the [trial] judge." *Commonwealth v. Gill*, . . . 206 A.3d 459, 466 ([Pa.] 2019) (internal quotation marks and citation omitted). "Absent an abuse of that discretion, an appellate court should not disturb a trial court's discretionary ruling." *Id*. "An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id*. at 466-67.

*Commonwealth v. DiStefano*, 265 A.3d 290, 297-98 (Pa. 2021).

Here, the trial court concluded that briefs were not necessary and, thus, did not fix a schedule therefor. This Court does not find that such conclusion "overrides or misapplies the law, or . . . is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id*. Accordingly, the trial court did not abuse its discretion by denying Requester's request to file a brief.[10]

Requester next argues that the trial court erred and abused its discretion by denying Requester's request to call the AORO to testify as a witness during the evidentiary hearing. Here, the AORO was the Assistant County Solicitor

---

[10] Considering Requester appeared before the trial court *pro se*, it was entirely reasonable for the trial court to deny such request.

9

representing the County at the trial court hearing. Requester did not subpoena the AORO prior to the hearing, nor did she state her intent to have the AORO testify until three quarters of the way into the trial court hearing. *See* Notes of Testimony, Apr. 29, 2021 (N.T.) at 104.

"Initially, '[t]he decision whether to admit or exclude the testimony of a witness is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.'" *McGuire on behalf of Neidig v. City of Pittsburgh*, 250 A.3d 516, 535 (Pa. Cmwlth.), *appeal granted*, 267 A.3d 483 (Pa. 2021) (quoting *Daddona v. Thind*, 891 A.2d 786, 811 (Pa. Cmwlth. 2006)).

Here, the following exchange occurred at the hearing:

Requester]: [] **I would like to call the open records officer**.

[AORO]: Your Honor, **there's no subpoena issued for me**, **and now she's turning me into a witness in a hearing that I've been acting as attorney for**.

[Requester]: Which was my objection in the beginning. She's defending her own [. . . .]

[AORO]: **She never made any statement or issued me any subpoena about** -- **to testify in this hearing**, nor did she make that part of the argument at the beginning of this case when Your Honor determined that I could represent the [C]ounty.

Moreover, there are serious concerns about my testimony, as I am an attorney and there could be potential attorney/client privilege in any answers I give, especially as it relates to my conversations between the [C]ounty agency, [C]ounty officials and providing these records. I'd like to know exactly what it is. I'm an officer of the Court. When I make statements to the Court, I am bound by the Rules of Professional Conduct to be honest with the tribunal. If there's a question that she'd like to address through the Court, I'm happy to address the [trial c]ourt directly and provide that information.

10

THE [TRIAL] COURT: What additional information do we need here? You know, tell me in your own words, why is this not a moot issue as far as the [B]oard of [E]lections? You have all the minutes except the one that [the County's voter services office technical manager Tim Germani is] going to look for and the [2017] tax duplicates. That's what you asked for, that's what you have. Why are we here?

[Requester]: **I would like to discuss responses that are in the record that the** [**AORO**] **made**, **so I would just like to ask her questions about them**. And certainly if there's any -- if I ask some question that has to do with attorney/client privilege, she can certainly tell me that that's privileged information.

[AORO]: I don't [. . . .]

[Requester]: There's [sic] e-mails that are a part of the record from the O[]O[]R[], and **I would just like to ask her some questions about her understanding of the meeting minutes I was looking for**, what I told her was missing before the second appeal was filed.

[AORO]: If she has e-mails, why doesn't she just admit the e-mails? They speak for themselves. She and I have never had a verbal conversation, and that is by design on my part. That's so every communication between us is in writing. So she can admit whatever e-mail she wants. If they're relative to an appeal that's not before this [trial c]ourt, this [trial c]ourt can give whatever weight it wants, but I don't know why she needs to put me on the stand other than to try to ask me questions that aren't relevant.

She has the records. She admitted she has the records. This is a remedial process. The process of judicial review of a[n] [RTKL] decision is so that a requester gets what they want. This is not the -- the court of punishment. This is not the court of my due process was violated [sic]. This is just to determine does she get – have what she requested. If not, the [C]ounty's got to do it.

That's what we're here for. That's it.

[Requester]: The [RTKL] provides that I can ask for sanctions and attorney's fees for actions --

11

THE [TRIAL] COURT: Well, you're not an attorney, so I'm not going to award you attorney's fees.

[Requester]: I'm just stating the law.

THE [TRIAL] COURT: I know what it says.

[Requester]: I have a right to present bad faith evidence on behalf of the [C]ounty that they did not provide the records, and if -- **if she is objecting to go on the stand for me to ask questions about the e-mails that are in the records just so that** -- **for clarification**, **then I can just go through them myself**.

THE [TRIAL] COURT: **Go through them**.

N.T. at 104-107 (emphasis added). After further discussion, the trial court concluded:

THE [TRIAL] COURT: Okay. What we're going to do, I'm not going to permit you to call [the AORO] as a witness. If you want to refer to exhibits that are in the O[]O[]R[] record, please do so. Identify them by date and subject matter, and the [trial c]ourt will give them some review, if appropriate. If not, I'll ignore them.

[REQUESTER]: Okay. Thank you, Your Honor. . . .

N.T. at 109.

This Court does not find that the trial court's determination in not permitting the AORO to testify "overrides or misapplies the law, or . . . is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id*. Accordingly, the trial court did not err or abuse its discretion by denying Requester's request to permit the AORO to testify.

Finally, Requester asserts that the trial court erred and abused its discretion by holding that neither the County nor the OOR acted in bad faith, and the OOR had not violated Requester's due process rights. Specifically, Requester contends that, regardless of whether she was successful in challenging the electronic

12

file format of the Election Board meeting minutes and the lengthy 2017 tax duplicate, the County did not provide a complete response or conduct a good faith search as required by Section 901 of the RTKL,[11] 65 P.S. § 67.901, and has acted in bad faith.

After receiving notice from the OOR Hearing Officer that Requester appealed from the deemed denials of the Requests and that the OOR issued deadlines for the County's response thereto, the AORO e-mailed the Hearing Officer (and copied Requester), explaining, in relevant part:

> I am now in receipt of the information dated [June 22, 2020,] regarding two appeals submitted by Requester . . . against [the] County.  Please note that I was out of the office as of [June 25, 2020,] and have just returned today. From [June 25, 2020] until [July 5, 2020,] I was on vacation.  Immediately following vacation, I had to quarantine for two weeks due to concerns of exposure to C[OVID]-19.  Today is the first unrestricted, full day that I have been able to be in my office.  Until today, I was restricted to working from home to the extent possible. Two of the other attorneys are in their late 70s/early 80s, and one is immuno-compromised due to a pre-existing condition.
>
> Further, as the only RTK[L] officer for [the] County (and a part-time employee at that), I have been sorting my requests from mid-March and working toward the present to account for the fact that as of March 17, 2020[,] I was reassigned to cover tasks for the County Solicitor, Thomas Leslie [(County Solicitor Leslie)].  [County Solicitor] Leslie[] had been instructed by his physician to not be

---

[11] Section 901 of the RTKL provides, in relevant part:

> Upon receipt of a written request for access to a record, **an agency shall make a good faith effort** to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request.

65 P.S. § 67.901 (emphasis added).

13

present in the County Courthouse from [March 16 to June 15, 2020]. During this time, the County Commissioners required that I be present on a full-time basis in the County Solicitor's office in the Courthouse. That office is within the County Commissioner's [o]ffice so as to provide the Commissioners with full-time, accessible legal assistance. My absence from my own office during this time resulted in having to close the [] County['s] RTK[L] office from [March 17, 2020 to June 1, 2020]. Even once the office was re-opened, I experienced a significant backlog of requests (in addition to new requests continuing to come in) that severely affected my ability to get up-to-date with RTK[L] requests for processing.

As of today, I have just received [Requester's] RTK[L] [R]equest[s] dated [June 2, 2020]. Also, I have prepared an extension notice to allow me [to] review and prepare any responses. However, as the date for submissions passed while I was in quarantine, I respectfully request that you permit submissions after the deadline. Additionally, it may be beneficial to extend the appeal deadline to allow [the] County the opportunity to respond to the [R]equests. Perhaps some or all of the [R]equests on appeal will be satisfied through our response to Requester.

R.R. at 16a.

On that same date, the AORO e-mailed Requester, wherein the AORO notified Requester that she had just received her Requests, that they were being reviewed, explained the reason for the delay, and requested a 30-day extension. *See* R.R. at 12a. Thereafter, on August 7, 2020, the AORO e-mailed to Requester the Election Board meeting minutes in PDF format for the dates May 15, November 6 and November 22, 2017, November 21, 2018, May 20, 2019, and May 5 and May 26, 2020. *See* R.R. at 25a.

This Court has explained:

In the RTKL context, "bad faith" does not require a showing of fraud or corruption. The lack of good faith compliance with the RTKL and an abnegation of mandatory duties under its provisions rise to the level of

14

bad faith. [*Off. of Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017)] (affirming trial court's award of [a] $500[.00] civil penalty for bad faith); *Chambersburg Area Sch. Dist. v. Dorsey*, 97 A.3d 1281 (Pa. Cmwlth. 2014) (agency failure to review responsive records was grounds from which fact-finder could discern bad faith); *Staub v. City of Wilkes-Barre & LAG Towing, Inc.* (Pa. Cmwlth.[] No. 2140 C.D. 2012, filed Oct[.] 3, 2013), 2013 WL 5520705 (unreported) (affirming attorney['s] fee award for agency failure to confer with contractor before responding to request). The RTKL reserves bad faith determinations for disposition by Chapter 13 Courts. *Bowling v. Off*[.] *of Open Records*, . . . 75 A.3d 453 ([Pa.] 2013).

**The RTKL requires an agency to make a good faith effort to find and obtain responsive records before denying access**. *Dorsey*. "[**A**]**n agency** [**may not**] **avoid disclosing existing public records by claiming**, <u>**in the absence of a detailed search**</u>, **that it does not know where the documents are**." *Pa. State Police v. McGill*, 83 A.3d 476, 481 (Pa. Cmwlth. 2014) (emphasis added). **Where an agency did not perform a search of its records under the RTKL until the matter was in litigation**, **the agency denied access in willful disregard of the public's right to public records**. *Parsons v. Pa. Higher Educ. Assist. Agency* (*PHEAA*), 910 A.2d 177 (Pa. Cmwlth.) (*en banc*) . . . (agency failure to review records before a hearing on denial showed willful violation of former [RTKL]).

A requester bears the burden of proving an agency committed bad faith. *Uniontown Newspapers*[,] [*Inc. v. Dep't of Corr*., 151 A.3d 1196 (Pa. Cmwlth. 2016).] Evidence of bad faith is required. *Barkeyville Borough v. Stearns*, 35 A.3d 91 (Pa. Cmwlth. 2012). After-discovered records are a type of evidence from which a court may discern bad faith. *Dorsey*. **Evidence of an agency**'**s failure to perform its mandatory duties**, **including a failure to search its records prior to a denial of access**, **may suffice**. *Dorsey*; *accord PHEAA*.

*Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 185 A.3d 1161, 1170-71 (Pa. Cmwlth. 2018), *aff'd*, 243 A.3d 19 (Pa. 2020) (bold emphasis added).

15

Here, the County did not deny the Requests without searching for the documents. Rather, the Requests were deemed denied for the County's failure to respond within five days. As explained by the AORO, her vacation, the pandemic and her reassignment to cover tasks for County Solicitor Leslie prevented her from timely reviewing the Requests. Based thereon, the OOR gave the County the requested extension. As soon as she was able to do so, the AORO reviewed the Requests, responded thereto, and provided the requested documents. Accordingly, the trial court did not err or abuse its discretion by determining that neither the County nor the OOR acted in bad faith, and the OOR did not violate Requester's due process rights.

For all of the above reasons, the trial court's order is reversed to the extent that the trial court found Requester's First Request for the missing Election Board meeting minutes moot, and affirmed in all other respects. The matter is remanded to the trial court to direct the County to provide Requester with the missing Election Board meeting minutes in the requested electronic PDF format.

_____
ANNE E. COVEY, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carrie Hahn,                          :
               Appellant              :
                            :
          v.                      :
                            :   No. 679 C.D. 2021
Lawrence County                       :

O R D E R

AND NOW, this 8th day of August, 2022, the Lawrence County (County) Common Pleas Court's (trial court) May 13, 2021 order is REVERSED to the extent that the trial court found Carrie Hahn's (Requester) First Request for the missing County Board of Elections (Election Board) meeting minutes moot, and AFFIRMED in all other respects. The matter is REMANDED to the trial court to direct the County to provide Requester with the Election Board meeting minutes for May 14, May 29, and November 5, 2018, in the requested electronic PDF format.

         Jurisdiction relinquished.


                                   _____
                                   ANNE E. COVEY, Judge